UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

               Plaintiff,               Case No. 18-13701

v.

                                      Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,        Mag. Stephanie Dawkins Davis

               Defendant.
_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS AMENDED COMPLAINT**

      Plaintiff, in response to Defendant's Motion to Dismiss Amended Complaint,

respectfully requests that the motion be denied for the reasons stated in the attached

Brief.

                Respectfully submitted,

                WATKINS, PAWLICK, CALATI & PRIFTI, PC

                By:    s/George H. Kruszewski_____
                      GEORGE H. KRUSZEWSKI
                      Attorneys for Plaintiff
                      1423 East 12 Mile Road
                      Madison Heights, MI 48071
                      (248) 658-0800
                      Email: gkruszewski@wpcplaw.com
Dated: March 14, 2019       (P-25857)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

            Plaintiff,                   Case No. 18-13701

v.

                                      Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,       Mag. Stephanie Dawkins Davis

            Defendant.
_____

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
<u>DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT.</u>**

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

Table of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Concise Statement of Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Statement of Controlling Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    I
         2011 MOU II IS NO LONGER IN EFFECT . . . . . . . . . . . . . . . . . . 6
    II
         THE WORK IN ISSUE HERE IS NOT OUTSIDE TELEPHONE WORK
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    III
         NEAP HAS STATED A CLAIM UPON WHICH RELIEF CAN BE
         GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

**Page**

Archambo v Lawyers Title Ins Corp, 466 Mich. 402, 414 n 16 (2002) . . . . . . . . 10

Bechtel Corp. v. Laborers International Union, 544 F.2d 1207, 1213 (3rd Cir., 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . . . 14

Central States Pension Fund v. Behnke, Inc., 883 F.2d 454, 460 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Communications Workers of Am. AFL-CIO v. Southwestern Bell Telephone Co., 713 F.2d 1118, 1123 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Inge v. Rock Financial Corp., 281 F.3d 613, 619 (6th Cir.2002) . . . . . . . . . . . 15

M & G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933, 190 L. Ed. 2d 809 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Montgomery Mailers' Union No. 127 v. Advertiser Co., 827 F.2d 709, 715 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Operating Engineers Local 324 Health Care Plan v. G & W Const. Co., 783 F.3d 1045, 1052 (6th Cir., 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Robbins v. Lynch, 836 F.2d 330, 333-34 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . 8

Trustees. of the Nev. Resort Association-International Alliance of Theatrical Stage Temples. & Moving Picture Mach. Operators of the United States v. Encore Prods., 742 F. Supp. 2d 1132 (D.N.V., 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Turker v. Ohio Dept. of Rehab. & Corr., 157 F.3d 453, 456 (6th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

UAW v. Randall Div. of Textron, Inc., 5 F.3d 224, 229 (7th Cir. 1993) . . . . . . . . 9

ii

## Concise Statement of Issue Presented

1.    Does the current collective bargaining agreement covering teledata work to which defendant is a party require it to contribute to Plaintiff NEAP on behalf of all of its employees performing work covered under the agreement, with no exclusion for  outside telephone work.

      Plaintiff says, "yes" .

2.    Is defendant currently performing  outside telephone work  as that term is used in the 2011 Memorandum of Understanding between the parties?

      Plaintiff says, "no".

3.    Has plaintiff stated a claim upon which relief can be granted?

      Plaintiff says, "yes".

## Statement of Controlling Authority

1.     As to standards for deciding Rule 12(b)(6) Motion

       Inge v. Rock Financial Corp., 281 F.3d 613, 619 (6th Cir.2002)

2.     As to standards for interpretation of contract.

       M & G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933, 190 L. Ed. 2d
       809 (2015).

       Bechtel Corp. v. Laborers International Union, 544 F.2d 1207, 1213 (3rd
       Cir., 1976)

iv

## **INTRODUCTION**

This lawsuit was filed by the Plaintiff National Electrical Annuity Plan (plaintiff or NEAP ) to obtain an audit and collect fringe benefit contributions which are owed by Defendant Henkels and McCoy, Inc. ("defendant" or "HM") Defendant has brought this motion arguing that NEAP has failed to state a claim under which relief can be given and that, in any case, it is not required to contribute to NEAP for the work that it has been performing.  For the reasons given below, both arguments should be rejected.

## **Statement of Facts**

The facts as alleged by NEAP in its Amended Complaint are as follows:

1.      Plaintiffs are the Trustees for the National Electrical Annuity Plan, which is a trust fund established under, and administered pursuant to, Section 302 of the Labor-Management Relations Act, of 1947, as amended (LMRA), 29 U.S.C. 186, and the Employee Retirement Income Security Act of 1974, as amended, hereinafter "ERISA", 29 USC 1001, et seq., with principal offices located in Rockville, Maryland.

2.      Defendant, Henkels & McCoy, Inc., is a Pennsylvania corporation, certified to do business in the State of Michigan, engaged in the building and construction industry, an industry affecting commerce within the meaning of the LMRA and 29 USC 1002(5) and (12), and its principal place of business is located in

1

Blue Bell, Pennsylvania.

3.     Jurisdiction of this Court is predicated on Section 301 of LMRA, 29 USC 185, and Sections 502(a)(2) and 515 of ERISA, 29 USC 1132(a)(2) and 1145, this being a suit for breach of the fringe benefit provisions of collective bargaining agreements entered into between the defendant, as Employer, the International Brotherhood of Electrical Workers ( IBEW ) and Local Unions #17 and #876 of the International Brotherhood of Electrical Workers (Local Unions), labor organizations representing employees in an industry affecting commerce.

4.     On March 1, 1995, the IBEW and defendant signed the Teledata Agreement (Exhibit A to Amended Complaint) which applies to low voltage construction, installation, maintenance, and removal of teledata facilities (voice, data, and video). . . throughout the United States.  This agreement, which remains in effect, has been supplemented in the State of Michigan over the years through agreement between defendant and the local unions.

5.     In early 2011, the Local Unions and defendant signed an Appendix to the National Agreement to be effective from November 29, 2010 through November 27, 2011 (Exhibit B to Amended Complaint). Section 5.07 of that Appendix provided that defendant would contribute to the NEAP at the rate of 16.5 percent of its gross monthly labor payroll.

2

6.      In December, 2011, through a Memorandum of Understanding ("2011 MOU I") (Exhibit C to Amended Complaint), the Local Unions and defendant agreed to extend the 2010-2011 Appendix for three years to November 23, 2014. 2011 MOU I was signed by Henkels & McCoy on December 9, 2011; by Local 876 on December 12, 2011; and by Local 17 on December 15, 2011.

7.      Through this extension of the 2010 - 2011 Appendix, the parties agreed that defendant would continue to be obligated to contribute to NEAP at a rate of 16.5% of its gross monthly labor payroll, with one exception. On the same dates on which the parties signed 2011 MOU I, the parties entered into a separate Memorandum of Understanding ("2011 MOU II") (Exhibit D to Amended Complaint) which provided that defendant would not have to contribute to the NEAP on "all outside telephone work" performed by the Employer.

8.      In late 2014 and early 2015 through a Memorandum of Understanding ("2014 - 2015 MOU") (Exhibit E to Amended Complaint) the Local Unions and defendant agreed to extend the 2011-2014 Appendix for two years to November 20, 2016. 2014-2015 MOU was signed by Henkels & McCoy on January 9, 2015; by Local 876 on December 16, 2014; and by Local 17 on December 22, 2014.

9.      Most recently, in 2017, the Local Unions and defendant signed an Appendix to the Teledata Agreement, which is effective November 21, 2016 through

November 25, 2018 (Exhibit F to Amended Complaint). In Section 5.07 of this Appendix, the parties agreed to contribute to NEAP an amount equal to 17% of payroll the first year of the agreement and to 18% effective November 24, 2017.

10.     Beginning in June, 2012, defendant performed work under the Teledata Agreement (Exhibit A to Amended Complaint) within the geographic jurisdiction of Local 17. Local 17 referred the following individuals to work for defendant: Ronald Bates, Bryan Frye, Lawrence Stephens Jr., Dwaine Craig, Joseph Schindler, William Banks, William Coffman, Cory Bates, Kevin Smith, Larry Sloniker. Defendant contributed to plaintiff NEAP based upon the work performed by these individuals.

11.     To plaintiff's knowledge, defendant did not again work within the State of Michigan under the Teledata Agreement (Exhibit A to Amended Complaint) until 2018, when beginning in June, 2018, and continuing through the present, it began the installation of a 5G network for Verizon in various locations within the geographic jurisdiction of Local 17, which includes the installation of MCI small cell equipment and overhead and underground fiber.

12.     Local 17 has referred individuals from its hall to work for defendant on the project described in Paragraph 11, specifically, Larry Hall, Clifford Benton, Jason Geiger, Rudi Dawidowicz, Travis Kern, Andrew Merrick, Logan Rothley, Joshua Brown, Lavonne Wilson, Thomas J. Cagle, Aaron B. Smith, Owen J. Peer, Daniel E.

Shuler, Joseph D. Roland, Dakota J. Kaufman, Gary R. Hunter, Timothy T. Sosebee, Vincent B. Hunter, Kaleb C. Tabor, and Darrell J. Garrett.

13.     Despite demand, defendant has refused to contribute to NEAP on behalf of its employees performing the work for Verizon described in Paragraph 11, above, contending that it is not required to do so based upon 2011 MOU II, which it argues is still in effect.

14.     Defendant's position is incorrect. First, 2011 MOU II only applied to "outside telephone work" and the work Henkels & McCoy currently is performing for Verizon is not "outside telephone work", as that term would have been used by the parties in 2011. Instead, it involves the installation of advanced technology not being used in this area in 2011 for the providing of internet, telephone, television, and other services.

15.     Second, 2011 MOU II has not been in effect since, at the latest, November 21, 2016 when the parties signed the current Appendix which increased the NEAP contribution to 17% and ultimately to 18%, while making no exception for "outside telephone work" or any other type of work.

16.     The total amount of defendant's indebtedness for delinquent contributions to NEAP, accrued liquidated damages, and interest to date cannot be determined until defendant submits its complete books and records for inspection and audit.

# ARGUMENT

# I

# 2011 MOU II IS NO LONGER IN EFFECT

HM's primary defense to the Complaint is that it is not required to contribute to NEAP because of 2011 MOU II, which admittedly provides that HM is not required to contribute to NEAP for all "outside telephone work" performed by the Employer. This defense fails, even if the work in question is "outside telephone work" as that term is used in the document (which it is not, as seen below), because this agreement is no longer in effect.

The Teledata Agreement between the IBEW and HM did not require contributions to NEAP.  That changed in early 2011, when the parties signed an Appendix to the National Agreement to be effective from November 29, 2010 through November 27, 2011.  Section 5.07 of that Appendix provided that defendant would contribute to the NEAP at the rate of 16.5 percent of its gross monthly labor payroll. (Exhibit B to Amended Complaint).

In December, 2011, the parties agreed to extend the 2010-2011 Appendix for three years to November 23, 2014.  (Exhibit C to Amended Complaint).  Through this extension, the parties agreed that defendant would continue to be obligated to contribute to NEAP at a rate of 16.5% of its gross monthly labor payroll, with one

6

exception.  At the same time that the parties signed the three-year extension, they entered into the separate Memorandum of Understanding (2011 MOU II), which forms the basis of HM's defense here (Exhibit D to Amended Complaint) which provided that defendant would not have to contribute to the NEAP on "all outside telephone work" performed by the Employer.

In early 2015, through a Memorandum of Understanding (Exhibit E to Amended Complaint) the Local Unions and defendant agreed to extend the 2011-2014 Appendix for two years to November 20, 2016.  This document did not mention contributions to NEAP.  Thus, it is unclear whether the parties intended the exclusion for "outside telephone work" to continue.  In any case, this issue did not have to be resolved because, to plaintiff's knowledge, HM did not perform any work covered under the teledata agreement in the State of Michigan during the time period this MOU was in effect.

Most recently, in 2017, the Local Unions and defendant signed an Appendix to the Teledata Agreement, which was effective November 21, 2016 through November 25, 2018 (Exhibit F to Amended Complaint).  On Page 12 of this 22 page document, specifically in Section 5.07 of this Appendix, the parties agreed to contribute to NEAP an amount equal to 17% of payroll the first year of the agreement and to 18% effective November 24, 2017.  Significantly, there was no exception made, as in 2011 MOU

II, for outside telephone work.  Thus, HM became obligated to contribute to NEAP

for <u>all</u> work that it performed that was covered under the teledata agreement, even if

that work could be classified as "outside telephone work".

HM's sole defense to this obligation is that 2011 MOU II remains in effect,

based upon the language of that document which says that it will serve as an

addendum to the Teledata Agreement "and all successor agreements."   It also points

to the final paragraph of this MOU, which provides that "In the event of any conflict

between the provisions of this MOU and the provisions of the aforementioned

Agreement, the provisions of this MOU shall prevail and take precedence."

There are several reasons why HM's defense here fails, the primary one being

that it is not one which is available to it in this lawsuit.  Section 515 of ERISA

provides:

> "Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms of a
> collectively bargained agreement shall, to the extent not inconsistent
> with law, make such contributions in accordance with the terms and
> conditions of such plan or such agreement. 29 U.S.C. §1145.

The Sixth Circuit has explained that "[t]his language was added to ERISA 'to

simplify delinquency collection'".  <u>Central States Pension Fund</u> v. <u>Behnke, Inc.</u>, 883

F.2d 454, 460 (6th Cir. 1989) (quoting <u>Robbins</u> v. <u>Lynch</u>, 836 F.2d 330, 333-34 (7th

Cir. 1988)).  Section 515 of ERISA "restricts the defenses employers may raise to

suits brought to collect delinquent contributions to ERISA funds." <u>Operating</u> <u>Engineers Local 324 Health Care Plan</u> v. <u>G & W Const. Co.</u>, 783 F.3d 1045, 1052 (6th Cir., 2015). The only recognized affirmative defenses are "fraud in the execution of the contract, illegality of contributions, decertification of the union, or termination of the contract." Id. at 1053.

The agreement that Plaintiff NEAP is enforcing here is the 2016 through 2018 Appendix to the Teledata Agreement which requires HM to contribute to NEAP for all work performed by its employees under that agreement, with no exclusion for any type of work. Based upon Section 515 of ERISA, HM cannot rely on a 2011 Memorandum of Understanding, not referenced in the current agreement, to defeat that claim. If HM intended that the exclusion of outside telephone work from NEAP contributions continue, it was required to include that provision in the current collective bargaining agreement.

Moreover, HM is simply wrong in its apparent position that 2011 MOU II essentially continues in perpetuity, modifying each and every future agreement reached by the parties. It is true that 2011 MOU II does not have a termination clause. However, that does not help HM's argument. "A labor contract of indefinite duration or one that does not specify a time or manner of termination is terminable at the will of either party upon reasonable notice to the other  party." <u>UAW</u> v. <u>Randall Div. of</u>

9

Textron, Inc., 5 F.3d 224, 229 (7th Cir. 1993) (citing Montgomery Mailers' Union No.

127 v. Advertiser Co., 827 F.2d 709, 715 (11th Cir. 1987) and Communications

Workers of Am. AFL-CIO v. Southwestern Bell Telephone Co., 713 F.2d 1118, 1123

(5th Cir. 1983)).  Thus, there were no formalities required for the parties to terminate

2011 MOU II.

     The fact that at least one party, the Local Unions, intended to terminate 2011

MOU II is reflected in the fact that the 2016 - 2018 Appendix contained no exclusion

from the obligation to contribute to NEAP for any type of work.  Ordinary rules of

contract construction apply in the interpretation of collective bargaining agreements.

Courts "interpret collective-bargaining agreements, including those establishing

ERISA plans, according to ordinary principles of contract law, at least when those

principles are not inconsistent with federal labor policy." M & G Polymers USA, LLC

v. Tackett, 135 S. Ct. 926, 933, 190 L. Ed. 2d 809 (2015).  One of those rules is that

a contract containing a term inconsistent with a prior contract between the same

parties is interpreted as rescinding the term of the prior contract.  Bechtel Corp. v.

Laborers International Union, 544 F.2d 1207, 1213 (3rd Cir., 1976).   See also.,

Archambo v Lawyers Title Ins Corp, 466 Mich. 402, 414 n 16 (2002). The 2011 MOU

II contained an exclusion for outside telephone work.  The 2016-2018 Appendix

contained no exclusions.  Therefore, the exclusion for outside telephone work no

10

longer exists.

The fact that the parties did not intend to continue 2011 MOU II in the 2016-2018 agreement also is reflected in the fact that the parties in 2016 specifically included in this document two Memorandums of Understanding that had been first negotiated by them in November, 2004.  (Exhibit F to Amended Complaint at 21-22).  The fact that they did not continue 2011 MOU II into the current Appendix is further evidence that they had no intentions of doing so.

HM argues against this interpretation by pointing out that there is no integration clause in the 2016-2018 Appendix, which would make it clear that this agreement was intended to supercede all prior agreements between the parties.  However, " . . it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties intended." Joseph v Rottschafer, 248 Mich. 606, 610-611 (1929).  That is what has occurred here.  The 2016-2018 Appendix supercedes the earlier 2011 MOU II based upon the inconsistency of their terms despite the lack of an integration clause.

11

## II

## __THE WORK IN ISSUE HERE IS NOT OUTSIDE TELEPHONE WORK__

As established above, even if HM were currently performing outside telephone work, it still would be required to contribute to NEAP on behalf of those employees performing such work because 2011 MOU II is no longer in effect.  However, even if 2011 MOU II currently was in existence, HM's position would not be helped because it is not performing outside telephone work as that term is used in 2011 MOU II.

In analyzing this argument, it is important to note, as HM does not, that the Teledata Agreement covers much more than telephone work.  Instead, by its terms, it covers: "... low voltage construction, installation, maintenance and removal of teledata facilities (voice, data and video) including outside plant, telephone and data inside wire, interconnect, terminal equipment, central offices, PABX, fiber optic cable and equipment, railroad communications, micro waves, V-SAT, by-pass, CATV, WAN (Wide area networks), LAN (local area networks), and ISDN (integrated systems digital network)."  (Exhibit A to Amended Complaint).  Thus, HM is clearly wrong when it appears to argue that because the work in question was performed outside, the work must be covered within the scope of 2011 MOU II.  In addition to

12

being performed outside, it had to be telephone work.  Indeed, all of the work performed under the Teledata Agreement by the Local Unions would be performed outside because they are both outside IBEW locals.

Further evidencing the fact that the Teledata Agreements cover much more than telephone work is the work performed by HM within the geographic jurisdiction of the Local Unions in 2012, <u>after</u> 2011 MOU II had been signed.  HM contributed to NEAP on behalf of its employees performing that work, establishing that at least some of the work being performed by HM must not be outside telephone work.  (Amended Complaint at ¶11).

Finally, the work currently being performed by HM within the jurisdiction of the Local Unions is the installation of a 5G network for Verison which involves advanced technology and equipment, not being used in this area in 2011, for the providing of internet, telephone, television, and other services.  (Amended Complaint at ¶¶ 12, 15).  Plaintiff alleges that this work is not "outside telephone work" as that term was used in 2011 MOU II.  (Id. at ¶15).  Plaintiff provides a factual basis for that conclusion and, for purposes of this motion to dismiss, this allegation must be taken as true.

## III

## NEAP HAS STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED

HM finally contends that the Amended Complaint must be dismissed because it fails to state a claim upon which relief can be granted.  To the contrary, the Amended Complaint provides a much more than necessary factual predicate for the relief requested.  A properly pleaded Complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678(2009). "Factual allegations must be enough to rise above the speculative level." Twombly,550 U.S. at 555. To survive a motion to dismiss under FRCP 12(b)(6), a Complaint must "contain enough facts to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 696 (internal quotation marks and citations omitted).

District courts must apply a two-step approach when considering motions to dismiss under Rule 12(b)(6). First, in reviewing such a motion, the Court "must accept all well-pleaded factual allegations of the Complaint as true and construe the

Complaint in the light most favorable to the plaintiff." <u>Inge</u> v. <u>Rock Financial Corp.</u>, 281 F.3d 613, 619 (6th Cir.2002) (citing <u>Turker</u> v. <u>Ohio Dept. of Rehab. & Corr.</u>, 157 F.3d 453, 456 (6th Cir.1998)).  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice  <u>Iqbal</u>, 556 U.S. at 678. Second, the court must consider whether the factual allegations in the Complaint allege a plausible claim for relief. Id. at 679. A claim is facially plausible when the Complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 663.

In <u>Trustees. of the Nev. Resort Association-International Alliance of Theatrical Stage Temples. & Moving Picture Mach. Operators of the United States</u> v. <u>Encore Prods.</u>, 742 F. Supp. 2d 1132 (D.N.V., 2010), the Court applied this standard in rejecting a motion to dismiss brought by the defendant employer, which, as here, had been sued by the plaintiff funds for non-payment of contributions.  Also as here, the defendant argued in its motion that the plaintiff had not alleged any facts in support of the allegation that the defendant had failed to make the required contributions.  The court found this argument unpersuasive.

> While the Trust Funds' Complaint is certainly not heavy on facts, it is sufficient under Rule 8 and 12(b)(6). As the Ninth Circuit reiterated,"for a Complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss</u> v. <u>U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal,* 129 S. Ct. at

15

1949). As already noted, the purpose of the pleading standards are to put the defendant on notice of a legally cognizable claim that is being brought against them. *See Twombly, 550 U.S. at 554*.

The Trust Funds' factual allegations are sufficient to make out such a legally cognizable claim. They allege the existence of a CBA agreement between Encore and IATSE. (Complaint P 4, # 1). They allege that the Plaintiff Trust Funds provide pension, wage disability, and training benefits to employees of Encore. (*Id.* PP 4-5). The Trust Funds allege that the CBA incorporates by reference the Trust Agreements establishing the IATSE Trust Funds and therefore obligating Encore to contribute to those funds. (*Id.* PP 6-7). Finally, the Trust Funds allege that Encore has failed to make all contributions under the CBA and Trust Agreements to the Trust Funds. (*Id.* P 8). This is sufficient to make out a legally plausible claim. Furthermore, the Complaint clearly puts Encore on notice as to the claim being made against it. Simply put, the Trust Funds Complaint meets the standards set forth in the Federal Rules of Civil Procedure and *Iqbal* and Twombly. Id. 1135.

Here, plaintiff alleges the existence of a collective bargaining agreement between the IBEW International and defendant, the teledata agreement, which has been supplemented by agreement between HM and Local Unions 17 and 876 over the years. Since at least November, 2010, that agreement has required contributions to the NEAP expressed as a percentage of its gross monthly payroll. In late 2011, the parties agreed that contributions would not be required to NEAP, but only for what they designated as "outside telephone work.

In June, 2012, HM performed work within the geographic jurisdiction of Local 17. HM paid contributions to the Plaintiff on behalf of the individuals referred by Local 17 to perform this work. HM did not perform any other work within the State

16

of Michigan until June, 2018.

In 2017, the parties entered into another agreement which increased the percentage contribution to NEAP, with no mention of an exclusion, as in the 2011 agreement for outside telephone work.  Beginning in June, 2018, HM again began performing work covered under the teledata agreement within the geographic jurisdiction of Local 17, specifically the installation of a 5G Network for Verison in various locations in the area.  Despite demand, HM has failed to pay contributions to NEAP on behalf of its individuals performing such work.

As in Encore Productions, these allegations are sufficient to make out a legally plausible claim against HM and clearly puts HM on notice as to that claim.  Plaintiff describes, and attaches, each relevant contract document through the present.  It identifies the work currently being performed by HM.  It alleges that the work began in June, 2018 and continues through the present.  The location of the work is also identified as being throughout the geographic jurisdiction of Local 17, which means that no specific address can be provided.   Plaintiff even identifies the specific individuals performing the work.  HM criticizes plaintiff because it does not identify the amount of HM's alleged indebtedness.  Of course, plaintiff could not do so, because it does not know the amount owed.  Instead, the relief requested in this Amended Complaint is for HM to provide its books and records for audit so that the

amount owed can be determined.

As discussed above, plaintiff even addresses in its Amended Complaint why HM is required to contribute to the Funds based on this work, despite HM's allegation that 2011 MOU II  excludes such work.

## CONCLUSION

Based upon the arguments advanced above, plaintiff asks that defendant's motion to dismiss its amended complaint be denied.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:   s/George H. Kruszewski
      GEORGE H. KRUSZEWSKI
      Attorneys for Plaintiff
      1423 East 12 Mile Road
      Madison Heights, MI 48071
      248-658-0800
      Email: gkruszewski@wpcplaw.com
      (P-25857)

Dated: March 14, 2019

18

**Certificate of Service**

George H. Kruszewski, attorney for plaintiffs, certifies that on March 14, 2019, he filed 1) Plaintiffs Response to Defendant's Motion to Dismiss Amended Complaint; 2) a supporting Brief; and 3) this Certificate of Service with the Court Clerk via the ECF system, which will provide the defendant with notice and service of such documents via its counsel of record.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:   s/George H. Kruszewski
      GEORGE H. KRUSZEWSKI
      Attorneys for Plaintiff
      1423 East 12 Mile Road
      Madison Heights, MI 48071
      248-658-0800
      Email: gkruszewski@wpcplaw.com

Dated: March 14, 2019    (P-25857)

19