UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

National Electronical Annuity Plan,

    Plaintiff,

v.

Henkels & McCoy, Inc.,

    Defendant.

Case No. 18-cv-13701

Hon. Robert H. Cleland
Mag. Stephanie Dawkins Davis

_____

| | |
|---|---|
| George H. Kruszewski (P25857)<br>Sachs Waldman<br>*Attorneys for Plaintiff*<br>1423 Easts Twelve Mile Road<br>Madison Heights, MI 48071<br>(248) 658-0800<br>gkruszewski@sachswaldman.com | Brian M. Schwartz (P69018)<br>MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.<br>*Attorneys for the Defendant*<br>150 West Jefferson, Suite 2500<br>Detroit, Michigan  48226<br>(313) 963-6420<br>schwartzb@millercanfield.com |

_____

**REPLY IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

**Hearing Date: April 17, 2019 at 2:00 P.M.**

Plaintiff National Electrical Annuity Plan's ("NEAP") response ignores critical facts, inaccurately describes the collectively bargained documents upon which its claims are based and does not establish that its Amended Complaint contains plausible allegations that Henkels & McCoy, Inc., ("H&M") failed to make required fringe benefit obligations. Instead, the facts indisputably establish: (a) that H&M is not required to make contributions for "outside telephone work" because the 2011 MOU II remains in effect and (b) the only work identified by the NEAP for which H&M allegedly failed to contribute is "outside telephone work."

## I. The 2011 MOU II Remains In Effect

Critically, the NEAP fails to identify any evidence that the parties—using the modification rules set out in their written agreements—modified, amended or terminated the 2011 MOU II. The 2011 MOU II is an "addendum to the Teledata Agreement." (Dkt#10-5, PageID#168). To modify, amend, or terminate the Teledata Agreement, a party must give specific written notice. (Dkt#10-2, Section 1.02, PageID#126). Notably, the NEAP does not identify any written demand by either local union to modify, amend, or terminate the 2011 MOU II. Instead, the NEAP's assertion that "at least one party, the Local Unions, intended to terminate 2011 MOU II," (Dkt#15 at p. 10), is based on speculation and not facts because the NEAP does not plausibly assert any facts that the Local Unions provided written notice and that the parties actually negotiated the elimination of MOU II. In the

1

absence of such written notice, the stand-alone 2011 MOU II remains in effect.[1]

The NEAP's assertion that the 2011 MOU II has not been in effect since the 2017 Appendix[2] was signed has no support within the four-corners of the collectively bargained documents. First, the 2017 Appendix does not even reference, and therefore does not modify, the 2011 MOU II. Second, it is irrelevant that the 2017 Appendix "mak[s] no exception for 'outside telephone work.'" (Dkt#15, Pl's Resp, ¶15 and p. 10). The 2011 Appendix also made no exception for outside telephone work. This is because the exception was contained in the separate, stand-alone 2011 MOU II.[3] Moreover, the 2017 Appendix does not

---

[1] *UAW v. Randall Div. of Textron*, 5 F.3d 224, 229 (7th Cir. 1993) does not assist Plaintiff. That case discusses what happens to a contract that "does not specify a time or manner of termination." *Id.* Here, the MOU II is a part of the Teledata Agreement, which contains specific provisions for modifying or terminating its terms. (Dkt#10-2, Section 1.02, PageID#126; Dkt#10-3, 2011 Appendix at p. 1, PageID#143; Dkt#10-7, 2017 Appendix at p. 1, PageID#172). Regardless, even if the 2011 MOU II was "terminable at the will of either party upon reasonable notice," *Randall*, 5 F.3d at 229, the NEAP does not allege any facts that any "notice" was provided to terminate the 2011 MOU II. Moreover, the Sixth Circuit has confirmed that "[w]hen a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision's termination." *Gallo v. Moen Inc.*, 813 F.3d 265, 269 (6th Cir. 2016). Here, the general durational language in the Teledata Agreement, along with the specific language discussing how modifications to the Agreement are to be made, govern.

[2] Plaintiff refers to this as the "2016-2018 Appendix," which was signed in 2017. (Dkt#10, ¶10, PageID.119; Dkt#15 at p. 10).

[3] The NEAP's passing comment that the MOU which extended the 2011 Appendix two years to November 20, 2016 (Amended Complaint Exhibit E) "did not mention contributions to the NEAP" is misplaced. That MOU was necessary because the 2011 MOU I only extended the Appendix for only three years, or until

*Continued on next page.*

contain any terms related to contributions for "outside telephone work" that are "inconsistent with a prior contract." Instead, the treatment of "outside telephone work" remained entirely consistent between the 2011 Appendix and the 2017 Appendix: it is not addressed within the appendices, but rather is specifically excluded from the type of work for which contributions are required by MOU II.[4]

Next, the NEAP's assertion that H&M cannot rely on the 2011 MOU II because it is an "affirmative defense" is misplaced. Relying on the plain language of a collectively bargained document does not constitute an "affirmative defense." Instead, as the NEAP admits, H&M's obligations under ERISA §515 derive from "the terms of the plan or *under the terms of a collectively bargained agreement*" and any contributions are to be made "*in accordance with the terms and conditions of* such plan or *such agreement*." 29 U.S.C. §1145 (emphasis added). As relevant here, the "terms" of the agreement includes the parties' express agreement that contributions are not required for "outside telephone work." H&M is not asserting an unavailable defense to the enforcement of a collectively bargained agreement. Instead, the plain language of the collectively bargained

---

*Continued from previous page.*
November 23, 2014. (Dkt#10-4, PageID.166). Absent a further extension, the Appendix would have expired. It was not necessary for Exhibit E to refer to contributions to the NEAP for outside telephone work since the 2011 MOU II did not contain any durational limitation requiring an extension.

[4] *Bechtel Corp. v. Local 215*, 544 F.2d 1207 (3d Cir. 1976) does not assist Plaintiff. There, a local contract and a national contract were inconsistent because each claimed it was superior to the other. *Id.* at 1212. No similar conflict exists here.

3

documents confirm that the obligation to contribute for "outside telephone work" does not exist. Indeed, the case law cited by the NEAP confirms that because "plans may rely on the literal terms of **_written agreements_** between the employer and the union, any oral understandings or practices between the contracting parties 'are immaterial.'" *Operating Engineers Local 324 v. G&W Construction Co.*, 783 F.3d 1045, 1051 (6th Cir. 2015) (emphasis added). In other words, *Operating Engineers Local 324* recognizes that collectively bargained obligations are often determined by reference to several "agreements."[5] Here, the only *written* agreement confirms that contributions are not required for "outside telephone work." Accepting Plaintiff's arguments would violate ERISA §515 by ignoring the plain terms of the *written* contracts.

The NEAP's argument that the 2011 MOU II is no longer in effect because it was not restated in the 2017 Appendix misconstrues facts. To support its argument, the NEAP refers to "two Memorandum of Understandings" that appeared in the 2011 Appendix and which were restated in the 2017 Appendix at p. 21-22. (Dkt#15 at p. 11). But, those two "Letters of Understanding" were *part of*

---

[5] There is no requirement under ERISA or the Labor Management Relations Act that all written obligations are contained in a single document. Thus, it is irrelevant whether the 2011 MOU II is referenced in the current Appendix. Plaintiff does not dispute that the 2011 MOU II is a collectively bargained document and does not provide any evidence that it has been terminated in accordance with the terms of the Teledata Agreement.

the 2011 Appendix, as indicated by the numbering on the pages, which continued from prior pages in the 2011 Appendix. (Dkt#10-3, 2011 Appendix at pp. 21-22). Because those two Letters of Understanding were part of the 2011 Appendix (as opposed to stand-alone MOUs), the failure to include both in the 2017 Appendix would have demonstrated that the parties were not carrying forward the understandings contained in *those Letters*. In other words, the re-inclusion of those two Letters of Understanding does not demonstrate that the parties modified, amended, or terminated the 2011 MOU II.

**II.    The Amended Complaint Only Alleges That Outside Telephone Work Was Performed**

The Amended Complaint does not contain any plausible facts establishing that H&M is failing to contribute in accordance with the terms of the applicable collective bargaining agreements. As set forth below, the NEAP's arguments to the contrary lack merit.

First, the NEAP's assertion that the location of the work is irrelevant lacks merit. In this regard, the NEAP selectively quotes the "Scope" language from the underlying Teledata Agreement. Reviewing that entire provision, however, it is clear that the Teledata Agreement applies to both "outside" and "inside"[6] work.

---

[6] Plaintiff excised the "inside" language from its quote, conveying the misleading implication that all work performed under the Teledata Agreement is "outside." Plaintiff's related argument that "all of the work performed under the Teledata
*Continued on next page.*

(Dkt#10-2 at PageID.125). Regardless, it is self-evident that electricians work both inside and outside and Plaintiff does not provide any evidence to support its speculation that IBEW members only work outside.[7] Accordingly, that H&M contributed to the NEAP for some work, (Dkt#10, Am Compl, ¶11), does not establish that the disputed work—"underground" and "overhead" work—falls outside the scope of MOU II. The only thing this action confirms is that H&M is contributing to the NEAP in accordance with the terms of the Teledata Agreement, its Appendix, and the 2011 MOU II.

The NEAP does not "provide[] a factual basis" for its conclusion that "overhead" and "underground" work fall outside the scope of MOU II. Instead, it relies solely on conclusory allegations that "this work is not 'outside telephone work' as that term was used in [the] 2011 MOU II. (Dkt#15 at p. 13). This is precisely the sort of conclusory language that *Iqbal* mandates courts disregard. Because the NEAP does not provide the "when, where, in what or by whom" regarding the alleged work, it cannot avoid dismissal merely by claiming that the work is not "outside telephone work" when the plain language of the Amended Complaint demonstrates otherwise. *Center for Bio-Ethical Reform v. Napolitano*,

---

*Continued from previous page.*
Agreement would be performed outside because they are both IBEW locals" is directly contradicted by the Teledata Agreement, which states that it covers the installation of "inside" work. (Dkt#10-2 at PageID.125).

[7] The current International IBEW President began his career as an "inside wireman." (*See* http://www.ibew.org/who-we-are).

648 F.3d 365, 373 (6th Cir. 2011).

Finally, Plaintiff cannot avoid *Iqbal*, *Twombly*, and the Sixth Circuit case law interpreting these cases by relying on a single, out-of-circuit district court case from Nevada. This is because the Sixth Circuit has confirmed that to avoid dismissal, the NEAP must "have greater knowledge now of factual details in order to draft a 'plausible complaint'" because *Iqbal* "is binding on the lower federal courts." *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011). After H&M filed its original motion to dismiss, the NEAP filed its Amended Complaint. That Complaint, however, fails to provide the "when, where, in what or by whom" to support the NEAP's claim that H&M is not making contributions that it is required to make. Instead, the Amended Complaint is based on speculation and guesswork, which is insufficient.

***

For the foregoing reasons, and those set forth in its initial Motion and Brief, H&M requests that the Court dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

Respectfully submitted,

/s/Brian M. Schwartz (P69018)
Miller, Canfield, Paddock and Stone, P.L.C.
*Attorneys for Defendant*
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz (P69018)
Miller, Canfield, Paddock and Stone, P.L.C.
*Attorneys for Defendant*
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartb@millercanfield.com
P69018

33272937.1\154842-00002