UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

    Plaintiff,      Case No. 18-13701

v.

              Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,   Mag. Stephanie Dawkins Davis

    Defendant.

_____

## **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

  Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiff moves this Honorable Court for entry of judgment against defendant Henkels and McCoy, Inc. and states as follows:

  1.  This lawsuit was filed by the Plaintiff National Electrical Annuity Plan (plaintiff or NEAP) to obtain an audit and collect fringe benefit contributions which are owed by Defendant Henkels and McCoy, Inc. ("defendant" or "HM") pursuant to collective bargaining agreements with the International Brotherhood of Electrical Workers ("IBEW") and Local Unions #17 and #876 of the IBEW ("Local Unions").

  2.  HM has refused to contribute to NEAP on behalf of certain of its employees performing work under these agreements contending that it is not

required to do so based upon a Memorandum of Understanding signed in December, 2011, under which it does not have to pay contributions to NEAP on what is referred to as "outside telephone work."

3. Defendant's position is incorrect as a matter of fact and law. The Memorandum of Understanding upon which HM is relying is no longer in effect. Even if it were in effect, the work currently being performed by HM is not "outside telephone work" as that term is used in the Memorandum of Understanding. Finally, the HM's reliance on the 2011 Memorandum of Understanding, which is not incorporated into the most current collective bargaining agreement, is not available against the plaintiff Fund as a matter of law.

4. The total amount of defendant's indebtedness for delinquent contributions to NEAP through July, 2019 has been determined to be $357,485.83.

5. As more fully set forth in its Brief in Support of Motion for Summary Judgment, plaintiff is entitled to judgment against HM for the $357,485.83 in contributions it owes for the period through July, 2019 in addition to the amounts to which plaintiff is entitled pursuant to ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2), and plaintiff's plan documents, including liquidated damages, attorneys' fees and costs.

6. Pursuant to Local Court Rule 7.1, on October 4, 2019, plaintiff's

counsel conferred with defendant's counsel with respect to this motion and relief sought herein. Plaintiff's counsel has explained the nature of the motion and the legal basis for the relief sought. Defendant's counsel has refused to concur in the relief sought under this motion.

7.    There being no genuine dispute as to any material fact, plaintiff is entitled to judgment as a matter of law.

WHEREFORE, plaintiff prays that judgment be entered in its favor containing the following provisions:

A.    Entering Judgment against defendant in favor of plaintiff in the amount of $357,485.83 in contributions it owes for the period through July, 2019;

B.    Permitting plaintiff to file a motion to amend to add to the judgment the interest, liquidated damages, costs, and attorneys' fees to which plaintiff is entitled pursuant to ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2), and plaintiff's plan documents, include liquidated damages, attorneys' fees and costs.

C.     Granting plaintiff any and all other relief (including injunctive and equitable relief) to which it might be entitled in equity and good conscience.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:    s/George H. Kruszewski
       GEORGE H. KRUSZEWSKI
       Attorneys for Plaintiff
       1423 East 12 Mile Road
       Madison Heights, MI 48071
       (248) 658-0800
       Email: gkruszewski@wpcplaw.com
       (P-25857)

Dated:  October 11, 2019

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

      Plaintiff,               Case No. 18-13701

v.

                                 Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,      Mag. Stephanie Dawkins Davis

      Defendant.

_____

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. v

STATEMENT OF CONTROLLING AUTHORITY ............................................. vi

INTRODUCTION ......................................................................................... 1

STATEMENT OF MATERIAL FACTS ............................................................... 1

ARGUMENT ............................................................................................... 6

I.  SUMMARY JUDGMENT SHOULD BE GRANTED WHEN THERE IS NO GENUINE DISPUTE AS TO ANY ISSUE OF MATERIAL FACT. ...... 6

II.  2011 MOU II IS NO LONGER IN EFFECT. .................................................. 7

III.  THE WORK IN ISSUE HERE IS NOT OUTSIDE TELEPHONE WORK. 13

IV.  HM'S RELIANCE ON 2011 MOU II IS UNAVAILABLE TO IT IN THIS ACTION BROUGHT BY THE PLAINTIF FUND. ..................................... 14

CONCLUSION AND RELIEF REQUESTED ...................................................... 20

CERTIFICATE OF SERVICE .......................................................................... 21

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 US 242 (1986)..................................................6

*Archambo v. Lawyers Title Ins Corp*, 466 Mich. 402 (2002)..................................11

*Bakery & Confectionery Union & Indus. Int'l Health Ben. & Pension Funds v. New Bakery Co.*, 133 F.3d 955 (6th Cir. 1998) ............................................. vi, 16

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018 (6th Cir. 1997).......................................................................16

*Bechtel Corp. v. Laborers International Union,* 544 F.2d 1207 (3d. Cir. 1976).......................................................................... vi, 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................7

*Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.,* 883 F.2d 454 (6th Cir. 1989)............................................................................ vi, 15

*Communications Workers of Am. AFL-CIO v. Southwestern Bell Telephone Co.,* 713 F.2d 1118 (5th Cir. 1983)..............................................................................10

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) ................................14

*Gencorp, Inc. v. American International Underwriters,* 178 F.3d 804 (6th Cir. 1999)................................................................................7

*Joseph v Rottschafer*, 248 Mich. 606 (1929) ..........................................................13

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982)..................................................16

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) ..........15

*M & G Polymers USA, LLC v. Tackett*,
   135 S. Ct. 926, 190 L. Ed. 2d 809 (2015) ........................................................ vi, 11

*Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...........................7

*Montgomery Mailers' Union No. 127 v. Advertiser Co.*,
   827 F.2d 709 (11th Cir. 1987)....................................................................................10

*Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*,
   783 F.3d 1045, 1051 (6th Cir. 2015) .....................................................................16

*Roeder v American Postal Workers Union*, *AFL-CIO*,
   180 F.3d 733 (6th Cir. 1999)......................................................................................7

*UAW v. Randall Div. of Textron, Inc.*, 5 F.3d 224 (7th Cir. 1993).........................10

## Statutes

29 U.S.C. §185, LMRA Section 301 ..........................................................................1

29 U.S.C. §186, LMRA Section 302 ..........................................................................1

29 U.S.C. §186(a), LMRA Section 302(a) ...............................................................15

29 U.S.C. §186(c)(5)(B), LMRA Section 302(c)(5)(B) .....................................15, 17

29 U.S.C. §§1001, *et seq.*, ERISA .............................................................................1

29 U.S.C. §1102(a)(1), ERISA Section 402(a)(1) ...................................................14

29 U.S.C. §1102(b)(4), ERISA Section 402(b)(4) ...................................................15

29 U.S.C. §1104(a)(1)(D), ERISA Section 404(a)(1)(D) .......................................15

29 U.S.C. §1132(a)(2), ERISA Section 502(g)(2).........................................1, 18, 19

29 U.S.C. §1145, ERISA Section 515 ..............................................................passim

## <u>Rule</u>

Fed.R.Civ.P. 56(a)........................................................................................................6

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.   Does the current collective bargaining agreement covering teledata work to which defendant is a party require defendant to contribute to Plaintiff NEAP on behalf of all of its employees performing work covered under the agreement?

     Plaintiff says, "Yes."

2.   Is defendant currently performing outside telephone work as that term is used in the 2011 Memorandum of Understanding between the defendant and IBEW Locals 17 and 876?

     Plaintiff says, "No."

3.   Is defendant's defense based upon the 2011 Memorandum of Understanding available against the Plaintiff Fund?

     Plaintiff says, "No."

4.   Is defendant's defense based upon the 2011 Memorandum of Understanding available against the Plaintiff Fund?

     Plaintiff says, "No."

5.   Is plaintiff entitled to damages including $357,485.83 in contributions plus additional amounts pursuant to ERISA and plaintiff's plan documents?

     Plaintiff says, "Yes."

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

As to standards for interpretation of contract:

> *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 190 L. Ed. 2d 809 (2015)

> *Bechtel Corp. v. Laborers International Union*, 544 F.2d 1207 (3d. Cir. 1976)

As to defenses available to employers in ERISA fringe benefit contribution matters:

> *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir. 1989)

> *Bakery & Confectionery Union & Indus. Int'l Health Ben. & Pension Funds v. New Bakery Co.*, 133 F.3d 955 (6th Cir. 1998)

## INTRODUCTION

This lawsuit was filed by the Plaintiff National Electrical Annuity Plan (plaintiff or NEAP) under Section 301 of the LMRA, 29 U.S.C. §185, and Sections 502(a)(2) and 515 of ERISA, 29 U.S.C. §§1132(a)(2) and 1145.  NEAP claims that Defendant Henkels and McCoy, Inc. ("defendant" or "HM") breached the fringe benefit provisions of collective bargaining agreements it entered into with the International Brotherhood of Electrical Workers ("IBEW") and Local Unions #17 and #876 of the IBEW ("Local Unions").  NEAP requests entry of an order that HM pay the fringe benefit contributions due and associated damages pursuant to ERISA and plaintiffs' plan documents.

## STATEMENT OF MATERIAL FACTS

1.     Plaintiff National Electrical Annuity Plan is a trust fund established under, and administered pursuant to, Section 302 of the Labor-Management Relations Act, of 1947, as amended (LMRA), 29 U.S.C. §186, and the Employee Retirement Income Security Act of 1974, as amended, hereinafter "ERISA", 29 U.S.C. §§1001, *et seq.*, with principal offices located in Rockville, Maryland. (Affidavit of Charles Nichols, Appdx. Ex. 1 at ¶2).

2.     Defendant, Henkels & McCoy, Inc., is a Pennsylvania corporation, certified to do business in the State of Michigan.  (Answer to Complaint at ¶2).

1

3.     In 1995, the IBEW and HM entered into the National Teledata Agreement ("National Agreement"). (Dep. Freind, Appdx. Ex. 2, pgs. 10-11; Dep. Freind, Ex. 1, Appdx. Ex. 3).

4.     In early 2011, the Local Unions and defendant signed an Appendix to the National Agreement to be effective from November 29, 2010 through November 27, 2011 ("2010-2011 Appendix").   Section 5.07 of that Appendix provided that defendant would contribute to the NEAP at the rate of 16.5 percent of its gross monthly labor payroll.  (Dep. Freind, Appdx. Ex. 2, pgs. 13 - 14; Dep. Freind, Ex. 2, Appdx. Ex. 4, p. 12).

5.     In December, 2011, through a Memorandum of Understanding ("2011 MOU I"), the Local Unions and defendant agreed to extend the 2010-2011 Appendix for three years to November 23, 2014 ("2011-2014 Appendix"). 2011 MOU I was signed by defendant on December 9, 2011; by Local 876 on December 12, 2011; and by Local 17 on December 15, 2011.  (Dep. Freind, Appdx. Ex. 2, pgs. 16-17; Dep. Freind, Ex. 3, Appdx. Ex. 5).

6.     On the same dates on which the parties signed 2011 MOU I, the parties entered into a separate Memorandum of Understanding ("2011 MOU II") which provided that defendant would not be required to contribute to the NEAP on "all outside telephone work" performed by the Employer.  (Dep. Freind, Appdx.

Ex. 2, pg. 19; Dep. Freind, Ex. 4, Appdx. Ex. 6).

7.      According to Freind, the 2011 MOU II was needed by the Company because of competition from the non-union element in the teledata field.  (Dep. Freind, Appdx. Ex. 2, pg. 20).  He did not know what projects HM was working on when this agreement was negotiated.  (*Id.*, pg. 22).

8.      The 2011 MOU II was negotiated by Keith Sarns, Business Manager of Local 876, IBEW and Stephen Freind, Vice President and Director of Labor Relations of HM, and Clint Grassmick, Area Director for the Central Region of HM.  (Dep. Freind, Appdx. Ex. 2, pgs. 19-22; Dep. Grassmick, Appdx. Ex. 7, pg. 8).

9.      Although Kevin Shaffer of Local 17, IBEW signed 2011 MOU II, he did not participate in its negotiation.  (Dep. Freind, Appdx. Ex. 2, pgs.19-20; Dep. Grassmick, Appdx. Ex. 7, pg. 9; Dep. Shaffer, Appdx. Ex. 8, pg. 15).  Mr. Shaffer spoke to Keith Sarns of Local 876, IBEW, by conference call, who explained to him that the agreement only was intended to apply to landline type of work.  (Dep. Shaffer, Appdx. Ex. 8, pgs. 15-17; Dep. Bradley Appdx. Ex. 9, pg. 35).

10.     Neither at the time that 2011 MOU II was negotiated nor afterwards was there any document which defined the term "outside telephone work" as used in that agreement.  (Dep. Freind, Appdx. Ex. 2, pgs. 23-24; Dep. Shaffer, Appdx.

Ex. 8, pg. 18; Dep. Bradley, Appdx. Ex. 9, pg. 37).  Clint Grassmick of HM does

not recall any discussions during the negotiations for 2011 MOU II regarding what

was to be considered "outside telephone work."  (Dep. Grassmick, Appdx. Ex. 7,

pg. 9).

11.    It was the understanding of Stephen Freind that any work covered

under the Teledata Agreement performed outside the building was "outside

telephone work."  (Dep. Freind, Appdx. Ex. 2, pg. 24).

12.    It is the position of Freind that if contributions were made for "outside

telephone work" after the 2011 MOU II was signed, it was an administrative error.

(Dep. Freind, Appdx. Ex. 2, pg. 28, 43).

13.    The 2011 MOU II was drafted by the Company.  (Dep. Ex. Gannon,

Appdx. Ex. 10, pgs. 7-8).

14.    In late 2014 and early 2015 through a Memorandum of Understanding

("2014-2016 MOU") the Local Unions and defendant agreed to extend the 2011-

2014 Appendix for two years to November 20, 2016.  The 2014-2016 MOU was

signed by Henkels & McCoy on January 9, 2015; by Local 876 on December 16,

2014; and by Local 17 on December 22, 2014.  The agreement was negotiated

between Stephen Freind and Hank Matulewicz of Local 876, IBEW.  Although

Dean Bradley, Business Manager of Local 17, IBEW, signed the agreement, he did

not participate in its negotiations.  (Dep. Freind, Appdx. Ex. 2, pg. 32; Dep. Freind,

Ex. 6, Appdx. Ex. 11; Dep. Bradley, Appdx. Ex. 9, pgs. 40-31).

15.    During the negotiations for the 2014-2016 MOU, Stephen Freind

cannot recall discussing 2011 MOU II with Hank Matulewicz or Dean Bradley.

(Dep. Freind, Appdx. Ex. 2, pg. 33).

16.    Most recently, in 2017, the Local Unions and defendant signed an

Appendix to the Teledata Agreement, which is effective November 21, 2016

through November 25, 2018 ("2016-2018 Appendix").   Section 5.07 of this

Appendix, the parties agreed to contribute to NEAP an amount equal to 17% of

payroll the first year of the agreement and to 18% effective November 24, 2017.

(Dep. Freind, Appdx. Ex. 2, pgs. 33-34; Dep. Freind, Ex. 7, Appdx. Ex. 12, pgs.

12-13).

17.    Although the 2016-2018 Appendix was signed by Chad Clark for

Local 876, IBEW, and Dean Bradley for Local 17, IBEW, Stephen Freind did not

negotiate the 2016-2018 Appendix with either of them.  (Dep. Freind, Appdx. Ex.

2, pgs. 34-35; Dep. Freind, Ex. 7, Appdx. 12, pg. 13; Dep. Bradley, Appdx. Ex. 9,

pg. 42).

18.    Dean Bradley did not become aware of the existence of 2011 MOU II

until late 2018 during the course of negotiations for a new contract.  (Dep. Bradley,

5

Appdx. Ex. 9, pgs. 37-38, 51).

19.    Between 2012 and 2016, HM contributed $633,705.80 to NEAP for work performed under the Teledata Agreement within the geographic jurisdiction of Local 17 and Local 876.  (Affidavit of Charles Nichols, Appdx. Ex. 1 at ¶5).

20.    From November, 2016 through July, 2019, HM has not paid a total of $357,485.83 in contributions to NEAP for work performed under the Teledata Agreement, as determined by a review of records by Fund Auditor Charles Nichols.   (Affidavit of Charles Nichols, Appdx. Ex. 1, at ¶¶4).

## **ARGUMENT**

### I.    **SUMMARY JUDGMENT SHOULD BE GRANTED WHEN THERE IS NO GENUINE DISPUTE AS TO ANY ISSUE OF MATERIAL FACT.**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The crux of summary judgment is determining "whether evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 251-52 (1986). In making this determination, the court must examine the record as a whole by reviewing all pleadings, depositions,

6

affidavits, and admissions on file, drawing all justifiable inferences in favor of the party opposing the motion. See *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the absence of a genuine dispute as to any material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Roeder v American Postal Workers Union*, *AFL-CIO*, 180 F.3d 733, 737 (6th Cir. 1999). If the moving party demonstrates that there is an absence of evidence supporting the non-moving party's case, the party opposing the motion must come forward with "specific facts showing that there is a genuine issue for trial." See *Matsushita*, 475 U.S. at 587; *Gencorp, Inc. v. American International Underwriters*, 178 F.3d 804, 811 (6th Cir. 1999). To sustain this burden, the non-moving party must come forward with specific facts to support its claim and show there is a genuine dispute for trial. See *Celotex*, 477 U.S. at 324.

## II.    2011 MOU II IS NO LONGER IN EFFECT.

HM's defense to the lawsuit is that it is not required to contribute to NEAP because of 2011 MOU II, which admittedly provides that HM is not required to contribute to NEAP for all "outside telephone work" performed by the Employer. This defense fails, even if the work in question is "outside telephone work" as that term is used in the document (which it is not, as seen below), because this

7

agreement is no longer in effect.

The 1995 Teledata Agreement between the IBEW and HM did not require contributions to NEAP for any work performed in the area covered by the Local Unions. That changed at some point in their relationship. For example, in early 2011, the parties signed an Appendix to the National Agreement to be effective from November 29, 2010 through November 27, 2011. Section 5.07 of that Appendix provided that defendant would contribute to the NEAP at the rate of 16.5 percent of its gross monthly labor payroll. (Statement of Material Fact ("SOMF") No. 4).

In December, 2011, the parties agreed to extend the 2010-2011 Appendix for three years to November 23, 2014. Through this extension, the parties agreed that defendant would continue to be obligated to contribute to NEAP at a rate of 16.5% of its gross monthly labor payroll, with one exception. (SOMF No. 5). At the same time that the parties signed the three-year extension, they entered into the separate Memorandum of Understanding ("2011 MOU II"), which forms the basis of HM's defense here, which provided that defendant would not have to contribute to the NEAP on "all outside telephone work" performed by the Employer. (See SOMF No. 6).

In early 2015, through a Memorandum of Understanding, the Local Unions

and defendant agreed to extend the 2011-2014 Appendix for two years to November 20, 2016. (SOMF No. 14). This document did not mention contributions to NEAP. There was no discussion during the negotiations regarding 2011 MOU II. (SOMF No. 15).

Most recently, in 2017, the Local Unions and defendant signed an Appendix to the Teledata Agreement, which was effective November 21, 2016 through November 25, 2018. (SOMF No. 16). On Page 12 of this 22-page document, specifically in Section 5.07 of this Appendix, the parties agreed to contribute to NEAP an amount equal to 17% of payroll the first year of the agreement and to 18% effective November 24, 2017. (SOMF No. 16). Significantly, there was no exception made, as in 2011 MOU II, for outside telephone work. (SOMF No. 16). Thus, HM became obligated to contribute to NEAP for <u>all</u> work that it performed that was covered under the teledata agreement, even if that work could be classified as "outside telephone work".

HM's sole defense to this obligation is that 2011 MOU II remains in effect, based upon the language of that document which says that it will serve as an addendum to the Teledata Agreement "and all successor agreements." It also points to the final paragraph of this MOU, which provides that, "In the event of any conflict between the provisions of this MOU and the provisions of the

aforementioned Agreement, the provisions of this MOU shall prevail and take precedence."  It does not dispute that 2011 MOU II was not discussed during the negotiations for the 2016-2018 contract.  There is no evidence that Chad Clark, who negotiated the agreement for Local 876, IBEW, and Dean Bradley, who signed this agreement for Local 17, IBEW, were even aware of the existence of 2011 MOU II.  They would have had no reason to know there was such a memorandum since contributions were being made by HM to NEAP for work done under the teledata agreement.

HM also is simply wrong in its apparent position that 2011 MOU II essentially continues in perpetuity, modifying each and every future agreement reached by the parties. It is true that 2011 MOU II does not have a termination clause.  However, that does not help HM's argument.  "A labor contract of indefinite duration or one that does not specify a time or manner of termination is terminable at the will of either party upon reasonable notice to the other party." *UAW v. Randall Div. of Textron, Inc.*, 5 F.3d 224, 229 (7th Cir. 1993) (citing *Montgomery Mailers' Union No. 127 v. Advertiser Co.*, 827 F.2d 709, 715 (11th Cir. 1987) and *Communications Workers of Am. AFL-CIO v. Southwestern Bell Telephone Co.*, 713 F.2d 1118, 1123 (5th Cir. 1983)).  Thus, there were no formalities required for the parties to terminate 2011 MOU II.

10

The fact that at least one party, the Local Unions, at least implicitly intended to terminate 2011 MOU II is reflected in the fact that the 2016-2018 Appendix contained no exclusion from the obligation to contribute to NEAP for any type of work.   Courts "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933, 190 L. Ed. 2d 809 (2015). One of those rules is that a contract containing a term inconsistent with a prior contract between the same parties is interpreted as rescinding the term of the prior contract.  *Bechtel Corp. v. Laborers International Union*, 544 F.2d 1207, 1213 (3d. Cir. 1976).   See also, *Archambo v. Lawyers Title Ins Corp*, 466 Mich. 402, 414 n. 16 (2002). The 2011 MOU II contained an exclusion for outside telephone work. The 2016-2018 Appendix contained no exclusions.  Indeed, it actually increased the contributions to NEAP while mentioning no exceptions.   Therefore, the exclusion for outside telephone work no longer exists.

This conclusion is reinforced by the deposition testimony of Stephen Freind of HM, who negotiated the 2016-2018 Appendix that he believed that all work performed outside the building was "outside telephone work".  Since Locals 17 and Local 876 are outside locals working outside the building no contributions to

11

NEAP would be required for any of the work that its members performed since it would all be "outside telephone work" covered under the terms of 2011 MOU II. Yet he actually agreed to increase the contribution to NEAP in the 2016-2018 contract.  Why would he have done that if he truly believed that 2011 MOU II was still in effect?

The fact that the parties did not intend to continue 2011 MOU II in the 2016-2018 Appendix also is reflected in the fact that the parties in 2016 specifically included in this document two Memorandums of Understanding that had been first negotiated by them in November, 2004.  (Dep. Freind, Ex. 7, Appdx. Ex. 12, pages 20-21.) The fact that they did not continue 2011 MOU II into the current Appendix is further evidence that they had no intentions of doing so.

HM has argued against this interpretation by pointing out that there is no integration clause in the 2016-2018 Appendix, which would make it clear that this agreement was intended to supercede all prior agreements between the parties. However, it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties

intended. *Joseph v Rottschafer*, 248 Mich. 606, 610-611 (1929). That is what has occurred here. The 2016-2018 Appendix supercedes the earlier 2011 MOU II based upon the inconsistency of their terms despite the lack of an integration clause.

## III. THE WORK IN ISSUE HERE IS NOT OUTSIDE TELEPHONE WORK.

As established above, even if HM were currently performing outside telephone work, it still would be required to contribute to NEAP on behalf of those employees performing such work because 2011 MOU II is no longer in effect. However, even if 2011 MOU II currently was in existence, HM's position would not be helped because it is not performing outside telephone work.

In analyzing this argument, it is important to note, as HM does not, that the Teledata Agreement covers much more than telephone work. Instead, by its terms, it covers: "... low voltage construction, installation, maintenance and removal of teledata facilities (voice, data and video) including outside plant, telephone and data inside wire, interconnect , terminal equipment, central offices, PABX, fiber optic cable and equipment, railroad communications, micro waves, V-SAT, by-pass, CATV, WAN (Wide area networks), LAN (local area networks), and ISDN (integrated systems digital network)." (Dep. Freind, Ex. 1, Appdx. Ex. 3, pg. 1). Thus, HM is clearly wrong when it appears to argue that because the work in

question was performed outside, the work must be covered within the scope of 2011 MOU II.  In addition to being performed outside, it had to be telephone work. Indeed, all of the work performed under the Teledata Agreement by the Local Unions would be performed outside because they are both outside IBEW locals.

Further evidencing the fact that the Teledata Agreements cover much more than telephone work is the work performed by HM within the geographic jurisdiction of the Local Unions <u>after</u> 2011 MOU II had been signed.  HM contributed to NEAP on behalf of its employees performing that work, establishing that at least some of the work being performed by HM must not be outside telephone work.

## IV.   HM'S RELIANCE ON 2011 MOU II IS UNAVAILABLE TO IT IN THIS ACTION BROUGHT BY THE PLAINTIFF FUND.

One of ERISA's "core functional requirements" is that each "employee benefit plan shall be established and maintained pursuant to a written instrument." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (quoting 29 U.S.C. §1102(a)(1)). Every employee benefit plan must "specify the basis on which payments are made to and from the plan," 29 U.S.C. §1102(b)(4), and "[t]he plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with'" ERISA provisions. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S.

14

285, 300 (2009) (quoting 29 U.S.C. §1104(a)(1)(D)).

Written plans are necessary because Section 302(a) of the Labor Management Relations Act ("LMRA") generally bars employers from contributing money or a thing of value to representatives of employees. 29 U.S.C. §186(a). This statutory prohibition exists to prevent the misappropriation or dissipation of money that is owed to union employees. *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989). To protect fringe benefits, an exception exists in Section 302(c)(5)(B) of the LMRA authorizing employers to make contributions to trust funds established by employee representatives "for the sole and exclusive benefit of the employees," if "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. §186(c)(5)(B).

Under such written agreements, the multiemployer fringe benefit trust funds become third-party beneficiaries and, under ERISA Section 515, 29 U.S.C. §1145,[1] they may rely on the literal terms of the written agreements. *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1051 (6th Cir.

---

[1]    Section 515 of ERISA provides:
       "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. §1145.

2015).  Section 515 protects and streamlines a trust fund's ability to collect an employer's delinquent contributions owed to an ERISA employee benefit plan by limiting the employer's assertion of "unrelated" or "extraneous" defenses, *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 88 (1982), and by rendering immaterial the actual intent of the bargaining parties or any understandings those parties may entertain separate and apart from the written agreements.  *Bakery & Confectionery Union & Indus. Int'l Health Ben. & Pension Funds v. New Bakery Co.*, 133 F.3d 955, 959 (6th Cir. 1998).  Thus, Section 515 "increases the reliability" of the income stream of multiemployer funds, "reduces the cost and delay associated with collection actions, and reduces or eliminates the cost of monitoring the formation of collective bargaining agreements." *Id.* (quoting *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (6th Cir. 1997)).

The agreement that Plaintiff NEAP is enforcing here is the 2016-2018 Appendix to the Teledata Agreement which requires HM to contribute to NEAP a specific percentage based upon its "gross monthly labor payroll."  There are no exclusions from this requirement based upon the type of work performed by its employees.  Based upon Section 515 of ERISA, HM cannot rely on a 2011 Memorandum of Understanding, not referenced in the current agreement, to defeat

16

that claim. If HM intended that the exclusion of outside telephone work from NEAP contributions continue, it was required to include that provision in the current collective bargaining agreement.

Any other conclusion would run contrary to the principle that LMRA Section 302(c)(5)(B) only authorizes employers to make contributions to trust funds established by employee representatives if "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. §186(c)(5)(B). There is nothing in the current agreement which would permit HM from deciding that it will not contribute for certain work otherwise covered under the written terms of the 2016-2018 Appendix because it considers it to be the undefined "outside telephone work" referenced only in 2011 MOU II.

This defense is unavailable to HM under Section 515 of ERISA which, as discussed above, renders immaterial the actual intent of the bargaining parties or any understandings those parties may entertain separate and apart from the written agreements. That conclusion is particularly appropriate here where the intent to include 2011 MOU II in the most current agreement was apparently only in the mind of the Employer, never having been mentioned at the bargaining table by HM to the Local Unions. The Fund is entitled to enforce the current agreement as it is written and cannot be expected to know that this agreement allegedly includes a

17

Memorandum of Understanding signed in 2011 which is not mentioned in the current agreement and has been ignored routinely over the years by HM when it allegedly, by mistake, has made hundreds of thousands of dollars of contributions to NEAP for work it now characterizes as "outside telephone work."

## V.   PLAINTIFF IS ENTITLED TO AN AWARD INCORPORATING $357,485.83 IN UNPAID CONTRIBUTIONS AS WELL AS ADDITIONAL DAMAGES.

Plaintiff is entitled to an award incorporating $357,485.83 in unpaid contributions as well as additional damages. The Plaintiffs' payroll auditor has determined that HM has not paid a total of $357,485.83 in contributions to NEAP for work performed under the Teledata Agreement from November, 2016 through July, 2019. (SOMF No. 20).

Pursuant to ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2), plaintiffs are entitled to unpaid contributions and additional damages as follows:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

18

(D) reasonable attorney's fees and costs of the action,
to be paid by the defendant, and
(E) such other legal or equitable relief as the court
deems appropriate.

Accordingly, plaintiffs request entry of judgment $357,485.83 in unpaid contributions for the period of from November, 2016 through July, 2019, as well as the granting of leave to file a motion to amend the judgment to incorporate additional damages as set forth in Section 502(g)(2) and plaintiffs' plan documents.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

Based upon the reasons stated above and the record as a whole, plaintiff respectfully requests that this Court grant the relief requested in its motion and enter Judgment for $357,485.53 for contributions for October, 2016 through July, 2019.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:   s/George H. Kruszewski
      GEORGE H. KRUSZEWSKI
      Attorneys for Plaintiff
      1423 East 12 Mile Road
      Madison Heights, MI 48071
      248-658-0800
      Email: gkruszewski@wpcplaw.com
      (P-25857)

Dated: October 11, 2019

## <u>CERTIFICATE OF SERVICE</u>

I certify that on **October 11, 2019**, I electronically filed (1) Plaintiffs'
Motion for Summary Judgment; (2) Brief in Support of Plaintiffs' Motion for
Summary Judgement; (3) Fact Appendix Index; and (4) this Certificate of Service
with the Clerk of the court, which will provide notice to all counsel of record.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:    s/George H. Kruszewski
       GEORGE H. KRUSZEWSKI
       Attorneys for Plaintiff
       1423 East 12 Mile Road
       Madison Heights, MI 48071
       248-658-0800
       Email: gkruszewski@wpcplaw.com
       (P-25857)

Dated:  October 11, 2019

21