UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

              Plaintiff,                  Case No. 18-13701

v.

                                        Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,        Mag. Stephanie Dawkins Davis

              Defendant.

_____

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, through its Counsel, in response to Defendant's Motion for Summary Judgment respectfully requests that the relief requested in that motion be denied. This response is based upon Plaintiff's Motion for Summary Judgment, previously submitted to the Court, and the supporting brief to this response, set forth below.

WHEREFORE, plaintiff prays that defendant's motion be denied and that instead plaintiff's motion be granted and  judgment be entered in plaintiff's favor containing the following provisions:

A.      Entering Judgment against defendant in favor of plaintiff in the amount of $357,485.83 in contributions it owes for the period through July, 2019;

1

B.     Permitting plaintiff to file a motion to amend to add to the judgment the interest, liquidated damages, costs, and attorneys' fees to which plaintiff is entitled pursuant to ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2).

C.     Granting plaintiff any and all other relief (including injunctive and equitable relief) to which it might be entitled in equity and good conscience.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:    s/George H. Kruszewski
       GEORGE H. KRUSZEWSKI
       Attorneys for Plaintiff
       1423 East 12 Mile Road
       Madison Heights, MI 48071
       (248) 658-0800
       Email: gkruszewski@wpcplaw.com
       (P-25857)

November 8, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

             Plaintiff,                 Case No. 18-13701

v.

                                     Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,      Mag. Stephanie Dawkins Davis

             Defendant.

_____

**BRIEF IN SUPPORT OF PLAINTIFF'S
RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Concise Statement of Issue Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Statement of Controlling Authority.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I      GENERAL RULES OF CONTRACT INTERPRETATION.. . . . . . . . . . . . 1

II     THE CURRENT COLLECTIVE BARGAINING
       AGREEMENT CONTAINS NO EXCLUSION FOR OUTSIDE
       TELEPHONE WORK.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III    THE WORK IN ISSUE HERE IS NOT OUTSIDE
       TELEPHONE WORK.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV     HM'S RELIANCE ON 2011 MOU II IS UNAVAILABLE TO IT IN
       THIS ACTION BROUGHT BY THE FUND.  . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION AND RELIEF REQUESTED.. . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

<u>Bechtel Corp.</u> v. <u>Laborers International Union</u>, 544 F.2d 1207 (3rd Cir., 1976). iv, 7

<u>Joseph</u> v. <u>Rottschafer</u>, 248 Mich. 606, 610-611 (1929). . . . . . . . . . . . . . . . . . . . . . 6

<u>Kellogg Co.</u> v. <u>NLRB</u>, 840 F.3d 322 (6th Cir., 2016) .. . . . . . . . . . . . . . . . . . . iv, 2

<u>Kelsey-Hayes Co.</u> v. <u>Galtaco Redlaw Castings Corp.</u>, 749 F.Supp. 794, 796 (E.D. Mi., 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Klapp</u> v. <u>United Ins.Group Agency, Inc.</u>, 468 Mich. 459 (2003). . . . . . . . . . . . iv, 2

<u>Operating Eng'rs Local 324 Health Care Plan</u> v. <u>G & W Constr. Co.</u>, 783 F.3d 1045 (6th Cir. 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 12

<u>Petovello</u> v. <u>Murray</u>, 139 Mich. App. 639, 642  (Mich. Ct. App. 1984). . . . . . . . . 1

## Concise Statement of Issue Presented

1.  Does the current collective bargaining agreement covering teledata work to which defendant is a party require it to contribute to Plaintiff NEAP on behalf of all of its employees performing work covered under the agreement?

    Plaintiff says, "yes" .

2.  Is defendant currently performing outside telephone work as that term is used in the 2011 Memorandum of Understanding between the defendant and IBEW Locals 17 and 876?

    Plaintiff says, "no".

3.  Is defendant's defense based upon the 2011 Memorandum of Understanding available against the Plaintiff Fund?

    Plaintiff says, "No".

4.  Is plaintiff entitled to damages including $357,485.83 in contributions plus additional amounts pursuant to ERISA and plaintiff's plan documents?

    Plaintiff says, "Yes."

**Statement of Controlling Authority**

1.     As to standards for interpretation of contract.

Kellogg Co. v. NLRB, 840 F.3d 322 (6th Cir., 2016)

Klapp v. United Ins.Group Agency, Inc., 468 Mich. 459 (2003).

Bechtel Corp. v. Laborers International Union, 544 F.2d 1207 (3rd Cir., 1976)

2.     As to defenses available to employers in ERISA fringe benefit collection matters.

Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co., 783 F.3d 1045 (6th Cir. 2015).

# ARGUMENT

# I

# GENERAL RULES OF CONTRACT INTERPRETATION

Plaintiff agrees with the general rules of contract interpretation set forth in defendant's brief. Courts interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy. As with any other contract, the parties' intentions control. Where the words of a contract in writing are clear and unambiguous, the contract's meaning is to be ascertained in accordance with its plainly expressed intent. Each provision of the CBA is to be interpreted as part of an integrated whole, meaning that, wherever possible, each provision is construed consistently with the entire document and the relative positions and purposes of the parties. Courts should not add words to a contract under the guise of construing it.

However, there are additional rules of interpretation which are just as important in the resolution of this dispute. A contract is unambiguous if it has only one reasonable interpretation, but is ambiguous if it is subject to two or more reasonable interpretations. Petovello v. Murray, 139 Mich. App. 639, 642  (Mich. Ct. App.

1

1984).  If the text is ambiguous, the Court  may consider extrinsic evidence to

decipher the parties' intent:

> "To the extent we find the plain language ambiguous, we may look outside of the document to determine the parties' intent by examining "relevant extrinsic evidence, such as a past practice of the parties in regard to the effectuation or implementation of the contract provision in question, or the bargaining history of the provision itself." Kellogg Co. v. NLRB, 840 F.3d 322, 329 (6th Cir., 2016)

> "[O]ne of the best indications of [the parties'] intent" is "[t]he practical interpretation given to contracts by the parties to them, while engaged in their performance and before any controversy has arisen concerning them."  Klapp v. United Ins.Group Agency, Inc., 468 Mich. 459, 479 (2003).

Finally,  if  after  applying  all  other  conventional  means  of  contract

interpretation,  including the consideration of extrinsic evidence, the terms are still

ambiguous, the rule of ***contra proferentem*** applies, which holds that ambiguities are

to be construed against their drafter.  Klapp, supra, 468 Mich. at 474.

As  seen  below,  applying  any  of  these  rules  of  interpretation  leads  to  the

conclusion that Judgment here should be rendered in plaintiff's favor.

## II

## THE  CURRENT  COLLECTIVE  BARGAINING AGREEMENT  CONTAINS  NO  EXCLUSION  FOR OUTSIDE TELEPHONE WORK

2

HM's only defense to the lawsuit is that it is not required to contribute to NEAP because of 2011 MOU II, which admittedly provides that HM is not required to contribute to NEAP for all "outside telephone work" performed by the Employer. This defense fails, even if the work in question is "outside telephone work" as that term is used in the document (which it is not, as seen below), because this MOU is <u>not</u> part of the 2016 - 2018 agreement.

Although the 1995 Teledata Agreement between the IBEW and HM did not require contributions to NEAP for any work performed in the area covered by the Local Unions, that eventually changed.  For example, in early 2011 the parties signed an Appendix to the National Agreement to be effective from November 29, 2010 through November 27, 2011.  Section 5.07 of that Appendix provided that defendant would contribute to the NEAP at the rate of 16.5 percent of its gross monthly labor payroll.  (JS, ¶13)[1]

In December, 2011, the parties extended the 2010-2011 Appendix for three years to November 23, 2014.  Through this extension, the parties agreed that defendant would continue to be obligated to contribute to NEAP at a rate of 16.5% of its gross monthly labor payroll, with one exception.  At the same time that the

---

[1]  The Joint Statement of Facts will be referred to as "JS", followed by the Paragraph Number.

parties signed the three-year extension, they entered into the separate Memorandum of Understanding ("2011 MOU II"), which forms the basis of HM's defense here. It provided that defendant would not have to contribute to the NEAP on "all outside telephone work" performed by the Employer.  (JS, ¶¶ 14, 15)

In early 2015, through another Memorandum of Understanding, the Local Unions and defendant agreed to extend the 2011-2014 Appendix for two years to November 20, 2016.  This document did not mention contributions to NEAP and there was no discussion during these negotiations regarding 2011 MOU II.  (JS, ¶28)

Most recently, in 2017, the Local Unions and defendant signed an Appendix to the Teledata Agreement, which was effective November 21, 2016 through November 25, 2018.  On Page 12 of this 22-page document, specifically in Section 5.07 of this Appendix, the parties agreed to contribute to NEAP an amount equal to 17% of payroll the first year of the agreement and to 18% effective November 24, 2017.  There was no exception made, as in 2011 MOU II, for outside telephone work. (JS, ¶¶30-32)

HM contends that 2011 MOU II remains in effect, based solely upon the language of that document which says that it will serve as an addendum to the Teledata Agreement "and all successor agreements."   It also points to the final paragraph of this MOU, which provides that, "In the event of any conflict between

4

the provisions of this MOU and the provisions of the aforementioned Agreement, the provisions of this MOU shall prevail and take precedence."  It does not dispute that 2011 MOU II was not discussed during the negotiations for the 2016-2018 contract. There is no evidence that Chad Clark, who negotiated the agreement for Local 876, IBEW, and Dean Bradley, who signed this agreement for Local 17, IBEW, were even aware of the existence of 2011 MOU II.  (JS,  ¶¶33, 41)

HM is wrong in its apparent position that 2011 MOU II essentially continues in perpetuity, modifying each and every future agreement reached by the parties, even when it has not been specifically mentioned during the course of negotiations.

Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.   The 2016 - 2018 agreement unambiguously provides that contributions will be made to NEAP by HM based upon HM's gross monthly labor payroll.  If HM intended there to be an exception for outside telephone work, it was incumbent for it to put that exception in that paragraph.  Because it did not do so, no such exception exists.

HM has argued against this interpretation by pointing out that the Local Unions never sent written notice to terminate or modify 2011 MOUII and that there is no integration clause in the 2016-2018 Appendix, which, it argues, would make it clear

5

that this agreement was intended to supercede all prior agreements between the parties.

With regard to the first argument, 2011 MOUII contained no provision for its termination or modification.  It just served as an addendum to the agreement in effect at the time, and to "successor agreements."  It would thus be subject to termination or modification in accordance with the same procedures by which the agreement in effect at the time and any successor agreements could be terminated or modified. These procedures were invoked when the Local Unions and HM engaged in negotiations for the 2016-2018 agreements.  Those negotiations resulted in 2011 MOU II not being carried over.

With regard to HM's second argument, it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract. Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract will supersede the earlier contract.  Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp., 749 F.Supp. 794, 796 (E.D. Mi., 1990), citing, Joseph v. Rottschafer, 248 Mich. 606, 610-611 (1929).  That is what has occurred here.  Despite the lack of an integration clause, the 2016-2018 Appendix supercedes

the earlier 2011 MOU II based upon the inconsistency of their terms**.**  Bechtel Corp.

v. Laborers International Union, 544 F.2d 1207, 1213 (3d. Cir. 1976).

It is not true, as HM contends, that 2011 MOU II and the 2016 - 2018
agreement can be reconciled with each other.  The 2011 MOU II contained an
exclusion for outside telephone work.  The 2016-2018 Appendix contained no
exclusions.  Indeed, it actually increased the contributions to NEAP while mentioning
no exceptions.  Therefore, the exclusion for outside telephone work no longer exists
because of the irreconcilable conflict between the earlier and later agreements.

This conclusion is reinforced by the deposition testimony of Stephen Freind of
HM, who negotiated the 2016-2018 Appendix, that he believed that all work
performed outside the building was "outside telephone work".  Since Locals 17 and
Local 876 are outside locals working outside the building, under his theory no
contributions to NEAP would be required for any of the work that its employees
performed since it would all be "outside telephone work" covered under the terms of
2011 MOU II.  Yet he actually agreed to increase the contribution to NEAP in the
2016-2018 contract.  He clearly would not have done that if he truly believed that
2011 MOU II was still in effect.

Indeed, based upon Freind's current position that all of the work being
performed under the Teledata Agreement is outside telephone work, his initial

wording of 2011 MOU II makes no sense. He should have drafted it to read that: "It is agreed and understood that for all work performed by Employer, the Employer shall not be required to make any contributions to the National Electrical Annuity Plan." By not drafting it that way, he made it clear that there was work covered under the teledata agreement, i.e., non-outside telephone work, for which the Employer would have to make contributions to the Plaintiff. When he failed to put even this exception in the 2016 agreement, he made it clear that contributions once again were required for all work covered under the teledata agreement.

III

**THE WORK IN ISSUE HERE IS NOT OUTSIDE TELEPHONE WORK**

As established above, even if HM were currently performing outside telephone work, it still would be required to contribute to NEAP on behalf of those employees performing such work because 2011 MOU II is no longer in effect. However, even if 2011 MOU II currently was in existence, HM's position would not be helped because it is not performing outside telephone work as that term is used in the collective bargaining agreement.

The Teledata Agreement covers much more than telephone work. Instead, by its terms, it covers: "... low voltage construction, installation, maintenance and removal of teledata facilities (voice, data and video) including **outside** plant,

8

**telephone** and data inside wire, interconnect , terminal equipment, central offices, PABX, **fiber optic cable and equipment**, railroad communications, micro waves, V-SAT, by-pass, CATV, WAN (Wide area networks), LAN (local area networks), and ISDN (integrated systems digital network)."  (JS, ¶4, emphasis added)

Thus, HM is clearly wrong when it argues that because the work in question was performed outside, the work must be covered within the scope of 2011 MOU II. In addition to being performed outside, it had to be telephone work.   As conceded by HM, all of the work performed under the Teledata Agreement by the Local Unions would be performed outside because they are both outside IBEW locals.   In examining the scope of work given in the contract, the term "outside . . . telephone . . . " is used.   However, more importantly, so is the term "fiber optic cable and equipment."   Thus, the scope of work distinguishes between "outside telephone work" and "fiber optic cable and equipment".   HM's representatives stressed during the course of their testimony that the work being performed by HM for Verizon is the installation of fiber optic cable.   (JS, ¶¶ 23, 25, 26).[2]   Thus, contrary to HM's

---

[2]

  HM has proffered a statement by Gary Smith, who it contends is an expert in the field.   Mr. Smith has not worked with HM since 2004 and clearly would have no expertise regarding the modifications to the Teledata Agreement in 2011 and afterwards.   Moreover, his statement that "fiber optic cable placement has always been considered outside telephone work and completed under the Tele-Data agreement" (JS at ¶23) is contradicted by the language of the Teledata Agreement

assertion, the work in question is specifically included within the scope of work covered under the Teledata Agreement upon which contributions to NEAP must be made. Any other conclusion would run counter to the rule stressed by HM that the specific words of the contract must be enforced as written.

Second, even if there is some ambiguity in the language of the 2016-2018 agreement, the Court is then allowed to look outside of the four corners of the contract to determine the parties' intent by examining the past practice of the parties in the implementation of the contract provision in question. As previously noted, "[O]ne of the best indications of [the parties'] intent" is "[t]he practical interpretation given to contracts by the parties to them, while engaged in their performance and before any controversy has arisen concerning them." Klapp, 468 Mich., at 479. Since 2011 MOU II was negotiated, HM has made over $540,000 in contributions to NEAP on what it now contends was outside telephone work. (Supplemental Affidavit of Charles Nichols at ¶3). It is absurd for HM to now claim that this was mere "administrative error", particularly where it argues that it was required to negotiate 2011 MOUII because of competition from the non-union element. Instead, these contributions, which were made before the instant controversy had begun, is the

---

which, in its scope of work, clearly distinguishes between outside telephone work and fiber optic cable work.

10

strongest evidence that this work was not outside telephone work, as that term was used in 2011 MOU II, but work within the defined scope of the teledata agreement upon which contributions were required.

If all else fails, the default rule of contract interpretation would apply, that ambiguities should be resolved against the drafter of the language.  2011 MOU II was drafted either by Sue Gannon or Steve Freind.  (JS, ¶16)  They had the opportunity to clarify what they meant by "outside telephone work."  They did not do so.  Indeed, there is no evidence that at any point HM ever discussed with Union representatives what was meant by the term, which admittedly was never defined.  (JS, ¶¶20, 21)  The 2016-2018 agreement was negotiated by Steve Freind with Chad Clark.  There is no evidence that Clark was aware of the existence of 2011 MOU II.  If Steve Freind really believed that 2011 MOU II would continue into the new agreement, it was incumbent on him to tell Clark this.  Freind did not do so.  Instead, he negotiated with the Local Unions to actually increase the contributions to NEAP during the term of the contract.  Freind clearly was in the position of greater bargaining power here.  He was aware of 2011 MOU II since he had negotiated it.  He also knew, or should have known, that the Local Unions were unaware of it.  The fact that the 2016-2018 agreement did not refer to the 2011 MOU II despite the fact that the parties specifically included in this agreement two Memorandums of Understanding that had

11

been first negotiated by them in November, 2004 (JS ¶30, Exhibit F to Amended Complaint at 21-22) and that 2011 MOU II was never even mentioned during the negotiations must be construed against the ultimate drafter of that document and lead to the conclusion that an exclusion for outside telephone work is not part of the most current contract.

## IV

## HM'S RELIANCE ON 2011 MOU II IS UNAVAILABLE TO IT IN THIS ACTION BROUGHT BY THE FUND

As set forth in detail in Section III of Plaintiff's Motion for Summary Judgment, defendant's reliance on 2011 MOU II must be rejected based upon § 515[3] of ERISA under which multi-employer fringe benefit trust funds become third-party beneficiaries and may rely on the literal terms of the written agreements. 29 U.S.C. § 1145 ; Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co., 783 F.3d 1045 , 1051 (6th Cir. 2015).

---

[3]Section 515 of ERISA provides:
"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. 29 U.S.C. §1145.

The agreement that Plaintiff NEAP is enforcing here is the 2016 through 2018 Appendix to the Teledata Agreement which requires HM to contribute to NEAP a specific percentage based upon its "gross monthly labor payroll."  There are no exclusions from this requirement based upon the type of work performed by its employees.  Based upon Section 515 of ERISA, HM cannot rely on a 2011 Memorandum of Understanding, not referenced in the current agreement, to defeat that claim.  If HM intended that the exclusion of outside telephone work from NEAP contributions continue, it was required to include that provision in the current collective bargaining agreement.

## CONCLUSION AND RELIEF REQUESTED

Based upon the reasons stated above and the record as a whole, Plaintiff respectfully requests that this Court grant the relief requested in this Response.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:    s/George H. Kruszewski
       GEORGE H. KRUSZEWSKI
       Attorneys for Plaintiff
       1423 East 12 Mile Road
       Madison Heights, MI 48071
       248-658-0800
       Email: gkruszewski@wpcplaw.com
       (P-25857)

Dated: November 8, 2019

13

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 8, 2019, I electronically filed (1) Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment; (2) Brief in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment; (3) Supplemental Affidavit of Charles Nichols; and (4) this Certificate of Service with the Clerk of the court, which will provide notice to all counsel of record.

Respectfully submitted,

WATKINS, PAWLICK, CALATI & PRIFTI, PC

By:    s/George H. Kruszewski
       GEORGE H. KRUSZEWSKI
       Attorneys for Plaintiff
       1423 East 12 Mile Road
       Madison Heights, MI 48071
       248-658-0800
       Email: gkruszewski@wpcplaw.com
       (P-25857)

November 8, 2019

14