UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL ELECTRICAL
ANNUITY PLAN,

         Plaintiff,                    Case No. 18-13701

v.

                                    Hon. Robert H. Cleland

HENKELS AND MCCOY, INC.,      Mag. Elizabeth A. Stafford

         Defendant.

_____

## JOINT STATEMENT OF UNDISPUTED FACTS

Pursuant to the Court's November 17, 2021 *Order Setting Briefing Schedule For A Trial On The Papers*, the parties submit the following *Joint Statement of Undisputed Facts*:

**A.    The Parties**

1.    Plaintiff National Electrical Annuity Plan ("NEAP") is a trust fund established under, and administered pursuant to, Section 302 of the Labor-Management Relations Act, of 1947, as amended ("LMRA"), 29 U.S.C. §186, and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, et seq., with principal offices located in Rockville, Maryland.   (Am. Compl., PageID.116 at ¶1.)

2.     Defendant, Henkels & McCoy, Inc. ("H&M"), is a Pennsylvania corporation, certified to do business in the State of Michigan.   (Ans. to Am. Compl., PageID.269 at ¶2).

**B.     The Teledata Agreement**

3.     In 1995, the IBEW and H&M entered into the Teledata Agreement. ("Teledata Agreement," attached to H&M's Brief at Dkt. 30-2, PageID.368-384, and to NEAP's Brief at 32-3, PageID.535.)

4.     The "Scope" of the Teledata Agreement states that it covers:

> low voltage construction, installation, maintenance and removal of teledata facilities (voice, data and video) including outside plant, telephone and data inside wire, interconnect, terminal equipment, central offices, PABX, fiber optic cable and equipment, railroad communications, micro waves, V-SAT, by-pass, CATV, WAN (Wide area networks), LAN (local area networks), and ISDN (integrated systems digital network).

(Teledata Agmt., Dkt. 30-2, PageID.368; Dkt. 32-3, PageID.535.)

5.     Section 1.01 of the Teledata Agreement provides:

> This Agreement shall take effect March 1, 1995 and shall remain in effect until February 28, 1996, unless otherwise specifically provided for herein.   It shall continue in effect from year to year thereafter, from March 1 through February 28 of each year, unless changed or terminated in the way later provided here.

(Teledata Agmt., Dkt. 30-2, PageID.369; Dkt. 32-3, PageID.536.)

6.     Section 1.02 of the Teledata Agreement provides:

Section 1.02   (a) Either party desiring to change or terminate this Agreement must notify the other, in writing, at least 90 days prior to the anniversary date.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice.

(c)   The existing provisions of the Agreement shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d)   Notice by either party of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

(Teledata Agmt., Dkt. 30-2, PageID.369; Dkt. 32-3, PageID.536.)

7.      The Teledata Agreement has not been terminated pursuant to Section 1.02, and it therefore remains in effect.

8.      The Teledata Agreement acknowledges that the parties might make changes to the agreement, but expressly states in Section 1.03:

…Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

(Teledata Agmt., Dkt. 30-2, PageID.369; Dkt. 32-3, PageID.536.)

**C.    The 2011 Appendix**

9.      H&M has also entered into supplements to the Teledata Agreement with IBEW local unions, namely, Local Union No. 17 ("Local 17") and Local Union No. 876 ("Local 876").   Together, Local 17 and Local 876 comprise the "Local Unions".

10.     In early 2011, the Local Unions and H&M signed an Appendix to the Teledata Agreement (the "2011 Appendix"). (2011 Appendix, Dkt. 30-9, PageID.421 and Dkt. 32-4, PageID.553.)

11.     The 2011 Appendix is one of several separate documents that modifies the Teledata Agreement for work done within Michigan, a similar process that occurs with respect to other locals nationwide. (Freind 10-11, Dkt. 30-4, PageID.399 and Dkt. 32-2, PageID.524.)

12.     The 2011 Appendix was to be effective from November 29, 2010 through November 27, 2011 and continue on a year-to-year basis unless changed or terminated.   It states as follows:

**EFFECTIVE DATE FOR APPENDIXES**

These Appendixes shall take effect November 29, 2010 and shall remain in effect until November 27, 2011, unless otherwise specifically provided for herein.  It shall continue in effect from year to year thereafter, from November 29 through November 27 of each year unless changed or terminated in the way later provided herein.

(A) Either party desiring to change or terminate these Appendixes must notify the other, in writing, at least 90 days prior to the anniversary date.

(B) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice.

(C)  The existing provisions of the Appendixes shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(D)    Notice by either party of a desire to terminate these Appendixes shall be handled in the same manner as a proposed change.

(2011 Appendix, Dkt. 30-9, PageID.421 and Dkt. 32-4, PageID.553.)

13.    Section 5.07 of the 2011 Appendix addresses contributions to NEAP, stating that the Employer will contribute to the NEAP at the rate of 16.5 percent of the gross monthly labor payroll.   (2011 Appendix, Dkt. 30-9, PageID.432 and Dkt. 32-4 at PageID.564).    It also contains provision for a 401(k) plan.    (*Id.* at PageID.431 and 563).

**D.    The 2011 MOU I and 2011 MOU II**

14.    A few months after signing the 2011 Appendix, H&M, Local 17, and Local 876 signed two memorandums of understanding.   The first memorandum, which is referred to in the Amended Complaint as "2011 MOU I," (Am. Compl., Dkt. 10, PageID.118 at ¶7) is an addendum to the Agreement, which is defined to include Appendices to the Teledata Agreement "and all successor Agreements." The 2011 MOU I states, in part:

> This [MOU], executed between Henkels & McCoy, Inc., hereinafter referred to as "Employer", and IBEW Locals 17 & 876, hereinafter referred to as "Unions", shall serve as an addendum to the Teledata Agreement, hereafter referred to as the "Agreement", between Employer and Union (which Agreement is in the form of Appendices to the National Teledata Agreement between Employer and the IBEW International), and all successor Agreements...

(2011 MOU I, Dkt. 10-4, PageID.166, *also at* Dkt. 30-10, PageID.443 and Dkt. 32-

5, PageID.575.)   The only substantive change to the Agreement contained in the

2011 MOU I is an increase in the wage rate. (*Id.*) The 2011 MOU I also extends the

"Agreement" three years, or until November 23, 2014.   (*Id.*)

15.    A second memorandum of understanding, referred to in the Amended

Complaint as the "2011 MOU II" (Am. Compl., Dkt. 10, PageID.118 at ¶8) also

serves as an addendum to the Teledata Agreement, its appendices, "and all successor

agreements":

> This [MOU], executed between Henkels & McCoy, Inc., hereinafter
> referred to as "Employer", and IBEW Locals 17 & 876, hereinafter
> referred to as "Union", shall serve as an addendum to the Teledata
> Agreement, hereafter referred to as the "Agreement", between
> Employer and Union (which Agreement is in the form of Appendices
> to the National Teledata Agreement between Employer and the IBEW
> International), and all successor Agreements.

(2011 MOU II, Dkt. 30-11, PageID.444 and Dkt. 32-6, PageID.577). It states that

H&M is not required to make any contributions to the NEAP for "all outside

telephone work":

> It is agreed and understood that for all outside telephone work
> performed by Employer:
>
> 1)  Employer *shall not be required to make any contributions to the*
> *National Electrical Annuity Plan.*
>
> 2)  The wages shall be ninety one per cent (91%) of the wage rates of
> all classifications contained in the aforementioned Agreements and all
> successor Agreements.

\*\*\*

(*Id.* (emphasis added)).   The 2011 MOU II also provided:

> 4)   In the event of any conflict between the provisions of this MOU
> and the provisions of the aforementioned Agreement, ***the provisions of***
> ***this MOU shall prevail and take precedence***.

(*Id.* (emphasis added)). 2011 MOU II does not contain any durational limitation.

(*Id.*)

16.     The 2011 MOU II was negotiated by Keith Sarns, Business Manager of Local 876, IBEW; Stephen Freind, Vice President and Director of Labor Relations of H&M; and Clint Grassmick, Area Director for the Central Region of H&M. Although Kevin Shaffer of Local 17, IBEW signed 2011 MOU II, he did not participate in its negotiation. (Shaffer 13-17, Dkt. 30-8, PageID.419 and Dkt. 32-8 at PageID.585; Bradley 19-20, Dkt. 30-3, PageID.387; Freind 18-19, Dkt. 30-4, PageID.400 and Dkt. 32-2, PageID.526; Grassmick 9, Dkt. 30-5, PageID.406 and Dkt. 32-7, PageID.581.)   Sue Gannon from H&M testified that, without going back and looking, she couldn't tell who drafted 2011 MOU II, but stated that "[i]t's most likely I did, but there are occasions that Steve [Freind] drafted some."   (Gannon 7-8, Dkt. 32-10, PageID.595.)

17.     Steve Freind testified regarding what led to the negotiation of the 2011 MOU II.   He stated that beginning around 1999, the market was facing "nonunion competition in areas where [H&M] never faced it before." (Freind 20, Dkt. 30-4,

PageID.400 and Dkt. 32-2, PageID.526.) In order to remain an IBEW contractor, "there were a number of concessions that we needed from the unions," including removing the provision for NEAP contributions and allowing H&M to pay only 91% of the listed wage rates.  (Freind 20-21, Dkt. 30-4, PageID.400-1 and Dkt. 32-2, PageID.526-7; *see also* Smith Report, Dkt. 30-12, PageID.445.)   Freind explained that Local 876 did not want to put the NEAP exclusion in the body of the agreement, but instead agreed to put it in the separate 2011 MOU II. (Freind 21-22, Dkt. 30-4, PageID.401-2 and Dkt. 32-2, PageID.526-7.)   The 2011 MOU II, in turn "was amending and being a part of that agreement … and all successor agreements." (Freind 22, *Id.*)

18.    Freind could not recall what projects H&M was working on when 2011 MOU II was negotiated.   (Freind 22, *Id.*)

19.    Shaffer testified that he spoke to Keith Sarns of Local 876 who stated that 2011 MOU II only was intended to apply to landline type of work. (Shaffer 15-17, Dkt. 30-8, PageID.419 and Dkt. 32-8 at PageID.585.)

20.    The term "outside telephone work" is not expressly defined in any of the collectively bargained documents or in any other document. (Freind 23-24, Dkt. 30-4, PageID.401 and Dkt. 32-2, PageID.527; Shaffer 18, Dkt. 30-8, PageID.419 and Dkt. 32-8 at PageID.585; Bradley 37, Dkt. 30-3, PageID.391; Teledata Agreement, Dkt. 30-2, PageID.369 and Dkt. 32-3, PageID.536.)

21.    Grassmick does not recall any discussions during the negotiations for 2011 MOU II regarding what was to be considered "outside telephone work." (Grassmick 9, Dkt.32-7, PageID.581.)

22.    Freind testified that "the general terminology was, outside telephone work is anything, communications performed outside." (Freind 24, 29, Dkt. 30-4, PageID.401, 403 and Dkt. 32-2, PageID.527 and 529).

23.    According to Gary Smith, in his 30 years of experience working in the industry with the IBEW, as well as in his dealings with Local 17 and Local 876, "fiber optic cable placement has always been considered outside telephone work and completed under the Tele-Data agreement."    (Smith Report, Dkt. 30-12, PageID.445).   Additionally, according to H&M's Director of Central Telecom Jon Joynson, H&M has "been laying fiber optic cable since the late '80s."   (Joynson 27, Dkt. 30-6, PageID.412).   IBEW Local 17 Business Manager Kevin Shaffer admitted that telephone calls can be transmitted over fiber optic lines. (Shaffer 16-17, Dkt. 30-8, PageID.419-420 and Dkt. 32-8, PageID.585-6).

24.    Local 17 and Local 876 are outside locals.   When work is to be done inside a building, it is done by individuals represented by inside IBEW Locals.   The work currently being done by H&M for Verizon is outside the building to the demarcation point.   (Joynson 12-13, Dkt. 30-6, PageID.408-409.)

25.    Local 17 Assistant Business Manager Mitchell confirmed that fiber

optic lines existed in 2011 and are not "new technology."   (Mitchell 23, Dkt. 30-7,

PageID.416).

26.     H&M has used the same general construction methodologies to install

fiber optic cables since the 1980s:

> Q.     What about the fiberoptic cable? Has the construction
> methodologies remained the same for laying fiberoptic cable?
> A.     Yes. I've been doing this 34 years and the only machinery that
> has been added has been directional boring, and that was in the
> late '80s, early '90s, and we're digging holes, putting in pipe and
> putting cable in it, and nothing's changed since that time.
> Q.     So the process that was used in the '80s to lay fiberoptic cable is
> the same process?
> A.     Same process.

(Joynson 28, Dkt. 30-6, PageID.412).   Joynson testified that while the manner in

which the client is using the fiber optic cables may have changed, the technology

and construction methods H&M has used to install those cables has remained the

same.   In other words, H&M was installing a cable in 2011 and a cable in 2018.

(Joynson 11-12, 28, Dkt. 30-6, PageID.408 and 412).

27.     Freind testified that if contributions were made to NEAP for "outside

telephone work" after the 2011 MOU II was signed, it was an administrative error.

(Freind  28  and  43,  Dkt.  30-4,  PageID.402  and  Dkt.  32-2,  PageID.528  and

PageID.532.)

**E.     The 2014 MOU**

28.     The Local Unions and H&M agreed to extend the 2011 Appendix for

two years to November 20, 2016 through another Memorandum of Understanding (the "2014 MOU," Dkt. 32-11, PageID.598.)   The 2014 MOU was signed by H&M on January 9, 2015; by Local 876 on December 16, 2014; and by Local 17 on December 22, 2014. (*Id.*)   The agreement was negotiated between Stephen Freind and Hank Matulewicz of Local 876.   Freind could not recall discussing the 2011 MOU II with Hank Matulewicz in 2014.   (Freind 33, Dkt. 30-4, PageID.404 and Dkt. 32-2, PageID.530.)

29.   Although Dean Bradley, Business Manager of Local 17, IBEW, signed the agreement, he did not participate in its negotiations.   (2014 MOU, Dkt. 30-13, PageID.447 and Dkt. 32-11, PageID.598; Freind 32, Dkt. 30-4, PageID.403 and Dkt. 32-2, PageID.529; Bradley 41, Dkt. 30-3, PageID.392.)

**F.     The 2017 Appendix**

30.   In 2017, the Local Unions and H&M signed another Appendix to the Teledata Agreement, which became effective November 21, 2016, but was executed in 2017 ("2017 Appendix"). In Section 5.07 of this Appendix, the parties agreed to contribute to NEAP an amount equal to 17% of payroll the first year of the agreement and to 18% effective November 24, 2017 of "gross monthly payroll."   (Freind 33-34; Dkt. 30-4, PageID.403 and Dkt. 32-2, PageID.529; 2017 Appx. 12-13, Dkt. 30-14, PageID.459-460 and Dkt. 32-12, PageID.611-612.)

31.   The 2017 Appendix was effective "until November 25, 2018, unless

otherwise specifically provided herein."   (2017 Appx at 1, Dkt. 30-14, PageID.448;

Dkt. 32-12, PageID.600.)   The 2017 Appendix automatically renews unless a party

seeking to modify or terminate the Appendix provides timely, detailed notice

regarding the nature of the changes desired.   (*Id.*)

32.    The 2017 Appendix does not mention the 2011 MOU II.   (*See id.*)

33.    The 2017 Appendix does not contain an integration clause purporting

to supersede prior agreements.   The 2011 MOU II was not discussed during

negotiations. (Bradley 43-45, Dkt. 30-3, PageID.392 and Dkt. 32-9, PageID.590;

Freind 35-36, Dkt. 30-4, PageID.403 and Dkt. 32-2, PageID.530 (stating he could

not recall if it was discussed).)

34.    Although the 2017 Appendix was signed by Chad Clark for Local 876

and Dean Bradley for Local 17, neither participated in the negotiations.   (Freind 34-

35, Dkt. 30-4, PageID.403 and Dkt. 32-2, PageID.530; Bradley 42, Dkt. 30-3,

PageID.392 and Dkt. 32-9, PageID.590.)

**G.    Additional Facts Regarding Bargaining History**

35.    In January, 2018, the parties negotiated and signed two Memorandum

of Understandings, dealing with the issues of portability and jurisdiction of the Local

Unions over Verizon work, which were addendums to the Teledata Agreement.

Local 17 Assistant Business Manager Mitchell did not participate in the negotiation

of the 2018 MOUs.  He testified that in order for either party to eliminate these

MOUs, that party would have to negotiate for the elimination of the MOU:

> Q.    Now if a party wanted to eliminate one of these MOUs, what
>       would they have to do?
> A.    You would have to negotiate it out.

(Mitchell 28, Dkt. 30-7, PageID.417.)

36.    Local 17 Business Manager Dean Bradley testified that it was Local

17's practice to put proposals to eliminate provisions of contracts in writing:

> Q.    What is Local 17's practice with respect to proposals; is it
>       provided in writing, orally?
> A.    Typically in writing.
> Q.    So if someone wants to add something to a contract, would they
>       normally provide a proposal in writing, you know, we want to
>       add no subcontracting language or something like that; you'd put
>       that in writing?
> A.    Typically, yes.
> Q.    How about if you were going to remove something from a
>       contract; would you put a proposal to remove certain language
>       from a contract in writing?
> A.    Typically, yes.

(Bradley 23, Dkt. 30-3, PageID.388).

37.    Bradley also testified that a party seeking to modify a collectively

bargained provision must provide at least 90 notice prior to the anniversary date of

the contract.   (Bradley 29, Dkt. 30-3, PageID.390).   Bradley stated that Local 17's

practice is to send letters regarding its intent to negotiate changes to the bargaining

agreements.   (Bradley 29, Dkt. 30-3, PageID.390).

38.    Since 2011, Local 17 has never submitted a letter of intent to modify

the collectively bargained documents. (Bradley 31, Dkt. 30-3, PageID.390). Instead, each time such a letter was sent, it was sent by Local 876. (8/25/11 letter, Dkt. 30-15, PageID.470; 8/20/14 letter, Dkt. 30-16, PageID.471; 8/27/18 letter, Dkt. 30-17, PageID.472.).

39. Neither Local Union has ever sent a proposal to amend, modify, or terminate the 2011 MOU II. (*Id., and see, e.g.,* Bradley 38-40, 43, Dkt. 30-3, PageID.391-2 and Dkt. 32-9, PageID.589; Shaffer 18-20, Dkt. 30-8, PageID.420 and Dkt. 32-8, PageID.586.) Local 17 Business Manager Bradley confirmed that prior to negotiating the current appendix, the unions **did not** send a notice of intent to modify, amend, or terminate the 2011 MOU II and that it was not even discussed during negotiations. (Bradley 43-45, Dkt. 30-3, PageID.392 and Dkt. 32-9, PageID.590.)

40. According to Gary Smith, the "NEAP's position or statement that the MOU II has not been in effect since, at the latest, November 21, 2016 when a new Appendix was signed, violates the Union's very own long standing position that no agreement or part of an agreement expires or is canceled unless in writing and approved by all parties." (Smith Report, Dkt. 30-12, PageID.445.)

## H. Recent Events

41. Mitchell and Bradley testified that they were not personally aware of the existence of 2011 MOU II prior to October 2018. (Mitchell 12, Dkt. 30-7,

PageID.414; Bradley 54-57, 61-62, Dkt. 30-3, PageID.395-397). Both assert that the first time they had personal knowledge of the 2011 MOU II was when they received a copy from H&M in October 2018.   (10/2018 email chain, Dkt. 30-18, PageID.473-4).

42.   After Bradley and Mitchell became aware of the 2011 MOU II, on October 31, 2018, they contacted counsel and drafted a letter stating their position that the 2011 MOU II was no longer in effect.   (10/31/18 letter, Dkt. 30-19, PageID.475; Bradley 58-60, Dkt. 30-3, PageID.396).   Bradley admitted that this letter was not sent 90 days prior to the anniversary date of the contracts.   (Bradley 39-40, 61-62, Dkt. 30-3, PageID.391, 397).

43.   Freind, who negotiated each collectively bargained agreement between H&M and Locals 17 and 876, including the 2011 MOU II, responded.   Freind explained that Bradley's belief about the MOU was not correct since it applied to "all successor agreements."   (10/31/18 email, Dkt. 30-20, PageID.477).

44.   On November 27, 2018, Plaintiff filed this lawsuit.   On January 16, 2019, H&M filed a motion to dismiss.

45.   On January 22, 2019, the Local Unions sent a letter regarding termination of 2011 MOU II.   (1/22/19 letter, Dkt. 30-21, PageID.478). On May 22, 2019, H&M responded, explaining in detail why the 2011 MOU II remains in effect. (5/22/19 letter, Dkt. 30-22, PageID.480).

46.     Bradley and Mitchell confirmed that Local 17 maintained copies of the 2011 MOU II in its files. (Mitchell 12, Dkt. 30-7, PageID.414; Bradley 9-10, Dkt. 30-3, PageID.386 (acknowledging that he relies on Mitchell to know what is in the CBAs), 52, PageID.394 (stating he probably told Mitchell to review the collective bargaining history)). Mitchell testified that while he "sometimes" reviews the relevant collectively bargained documents prior to negotiations, with respect to negotiations with H&M he "didn't go backwards to see what they did in the past." (Mitchell 12-13, Dkt. 30-7, PageID.414).

47.     Mitchell initially testified that he only personally had "the last five years of files" related to H&M and that older files were "in storage." (Mitchell 14, Dkt. 30-7, PageID.415).   Mitchell later admitted that "storage" meant that the files were on a different floor in Local 17's headquarters.  (Mitchell 15-16, Dkt. 30-7, PageID.415).   It took him a half hour to find a copy of the 2011 MOU II in Local 17's files once he went to look for it in response to a subpoena served in this lawsuit. (Mitchell 16, Dkt. 30-7, PageID.415)

**G.     Complaint Allegations**

48.     According to Plaintiff, the work that H&M is performing is "the installation of a 5G network … in various locations within the geographic jurisdiction of Local 17, which includes the installation of MCI small cell equipment and overhead and underground fiber."   (Am. Comp., ¶12, Dkt. 10, PageId.119-120).

Plaintiffs do not allege that this work is being performed inside.   (*See id.*) This work, which is for Verizon, is also described as consisting of over 1,500 miles "of aerial and underground fiber optic cable and conduit construction." (Joynson 9-10, Dkt. 30-6, PageID.408; 5/2018 email chain at 2, Dkt. 30-23, PageId.482).

49.    Director of Central Telecom Jon Joynson, who oversees the project, explained that H&M installs the cable up to a demarcation point, and that all of the work performed is "outside the building."[1]  (Joynson 10-12, Dkt. 30-6, PageID.408). Joynson explained that when H&M bid on the Verizon project, it did so with the understanding that the 2011 MOU II and its associated cost structure, remained in effect. (Joynson 14-18, Dkt. 30-6, PageID.409-410.).

| | |
|---|---|
| /s/George H. Kruszewski (w/ consent)<br>WATKINS, PAWLICK, CALATI, &<br>PRIFTI, PC<br>*Attorneys for Plaintiff*<br>1423 Easts Twelve Mile Road<br>Madison Heights, MI 48071<br>(248) 658-0800<br>gkruszewski@wpcplaw.com | /s/Brian M. Schwartz<br>MILLER, CANFIELD, PADDOCK<br>  AND STONE, PLC<br>*Attorney for Defendant*<br>150 West Jefferson, Suite 2500<br>Detroit, MI 48226<br>(313) 963-6420<br>schwartzb@millercanfield.com |
| Dated:   December 17, 2021 | Dated:   December 17, 2021 |

---

[1] If the demarcation point is inside the building, a small amount of work may occur inside the structure.   (Joynson 12, Dkt.30-6, PageID.408).

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz (P69018)
Miller, Canfield, Paddock and Stone, P.L.C.
*Attorneys for Defendant*
150 West Jefferson, Suite 2500
Detroit, Michigan   48226
(313) 963-6420
schwartb@millercanfield.com
P69018